(March 30, 1911.)

L. F. PARSONS, Appellant, v. JOE WRBLE, Respondent.

[115 Pac. 8, 13.]

ACTION TO QUIET TITLE—DEFAULT OF DEFENDANT—SETTING ASIDE DEFAULT AND JUDGMENT—DISCRETION OF TRIAL COURT—MERITORIOUS DEFENSE.

(Syllabus by the court.)

1. Under the showing of facts made in this action, the respondent was entitled to have the default set aside, the judgment vacated and to be allowed to defend.

2. The showing of respondent in support of his motion to set aside the default and vacate the judgment, with regard to the circumstances of mistake, inadvertence, surprise or excusable neglect, specified as grounds for such motion in sec. 4229, Rev. Codes, is sufficient.

3. Where only documentary evidence is before the court below, and it renders its decision upon such evidence alone, this court will make an original examination of the evidence as contained in the record, and will exercise its judgment and discretion, the same as if the case were being presented to it in the first instance.

APPEAL from the District Court of the Second Judicial District, for Nez Perce County. Hon. E. C. Steele, Judge.

Action to set aside default, vacate judgment and permit defendant to come in and defend, on action to quiet title. Default and judgment set side and defendant allowed to make this defense, from which order of the lower court plaintiff appeals. *Affirmed.*

John O. Bender and D. E. Hodge, for Appellant.

"In such cases (hearing on documentary evidence alone) the rule is that this court will make an original examination of the evidence as contained in the record, and will exercise its judgment and discretion the same as if the case were being presented to us for determination in the first instance." (*Council Imp. Co. v. Draper,* 16 Ida. 541, 102 Pac. 7; *Van Camp v. Emery,* 13 Ida. 202, 207, 89 Pac. 752; *Roby v. Roby,* 10 Ida. 139, 77 Pac. 213.)

Mistaking the nature of a process by a defendant is by itself not a reason for setting aside a default and judgment taken against him. He is bound to read it and know what it is; and if, by reason of illiteracy or physical disability, this be beyond him, then he is bound to have it read and explained to him. Failing in this, he is bound by the default. (23 Cyc. 933; *White v. Snow,* 71 N. C. 232; *Allen v. O'Neill,* 4 Mo. App. 221; *Ball v. Mander,* 19 How. Pr. (N. Y.) 468; *Teabout v. Roper,* 62 Iowa, 605, 17 N. W. 906; *Lowe v. Hamilton,* 132 Ind. 406, 31 N. E. 1117; *Dean v. Noel,* 24 Ky. L. 969, 70 S. W. 406; *Sutton v. Gunn,* 86 Ga. 652, 12 S. E. 979.)

"A party seeking relief against a judgment on the ground of his excusable negligence must clear himself of the imputation of want of due diligence; he cannot have relief if the taking of the judgment appears to have been due to his own carelessness, slothfulness, or indifference to his own rights. Thus to put himself in a position where he can claim relief against an adverse judgment, *he must unless he*

*means to try his own case, retain an attorney practicing in
the particular court.''* (23 Cyc. 937; *Jett v. Herald,* 23
Ky. 9, 62 S. W. 264; *Union etc. Co. v. Lipscomb* (Tex. Civ.
App.), 27 S. W. 307; *McClure v. Clarke,* 94 Minn. 37, 101 N.
W. 951; *Post v. Carr,* 42 W. Va. 72, 24 S. E. 583; *Benedict
v. Hadlow Co.,* 52 Fla. 188, 42 So. 239; *Mutual etc. Co. v.
Ross,* 42 Ind. App. 621, 86 N. E. 506; *Hays v. Bank,* 21 Ind.
154; *Cogdell v. Barfield,* 9 N. C. 332; *Churchill v. Brooklyn
etc. Co.,* 88 N. C. 205.)

"According to the rule generally favored, the party seeking
to have a judgment vacated or opened must establish the
facts on which he relies by clear, strong, and satisfactory
proof.'' (23 Cyc. 960–962; *Hoffman v. Loudon,* 96 Mo. App.
184, 70 S. W. 162; *Johnson, Lane & Co. v. Nash-Wright Co.,*
121 Iowa, 173, 96 N. W. 760; *Brown v. Stegemann* (Iowa),
81 N. W. 450; *Swanstrom v. Marvin,* 38 Minn. 359, 37 N.
W. 455.)

Clay McNamee, for Respondent.

"The granting or refusing of a motion to set aside a
default based upon affidavits is a matter within the proper
discretion of the court before whom the motion is made;
and unless that discretion has been abused the appellate
court will not interfere.'' (*Western Loan & Savings Co. v.
Smith,* 12 Ida. 94, 85 Pac. 1084; *Holland Bank v. Lieuallen,* 6
Ida. 127, 53 Pac. 398; *Holzeman v. Henneberry,* 11 Ida. 428,
83 Pac. 497; *Culver v. Mountainhome Electric Co.,* 17 Ida.
669, 107 Pac. 65; *Baker v. Knott,* 3 Ida. 700, 35 Pac. 172;
*Bailey v. Taaffe,* 29 Cal. 423; *Woodward v. Backus,* 20 Cal.
137; *Roland v. Kreyenhagen,* 18 Cal. 455; *Buell v. Emerich,*
85 Cal. 116, 24 Pac. 644; *Garner v. Erlanger,* 86 Cal. 60,
24 Pac. 805; *Williamson v. Cummings Rock Drill Co.,* 95
Cal. 652, 30 Pac. 762.)

"The action of the trial court, in setting aside a judgment
upon a showing of inadvertence and mistake, will not be
disturbed if the appellate court cannot say, under all the
circumstances, that the court below abused its discretion, even

though the showing may be a weak one." (*Underwood v. Underwood*, 87 Cal. 523, 25 Pac. 1065.)

"The supreme court will not interfere with the action of the trial court in making an order setting aside a default, and judgment thereon, and permitting the defaulting party to answer, where it appears to have been made upon an affidavit of merits, unless it affirmatively appears that the court was without jurisdiction to make the order, or abused its discretion in making it." (*Reinhart v. Lugo*, 86 Cal. 395, 21 Am. St. 52, 24 Pac. 1089.)

WOODS, District Judge.—On January 17, 1910, L. F. Parsons brought his action in the court from which appeal is taken, to quiet title against the respondent to the northeast quarter of section 26, in township 36 north, of range 3 W., B. M., in Nez Perce county, Idaho. Personal service of summons was had on respondent the 20th of that month, and on February 10, 1910, his default for nonappearance was entered. The next day judgment was entered against him in favor of appellant, as prayed for in the complaint. On June 2, 1910, respondent filed his motion to set aside the default and vacate the judgment; the hearing was had on affidavits filed by the respective parties and the amended answer proffered by respondent, and on August 4, the judge of the trial court made an order setting aside the default and judgment and permitting the respondent to come in and defend. From this order this appeal is taken.

There are several assignments of error, but in the argument they were argued, and probably can be considered, together.

The first question presented is this: Is the showing of respondent in support of his motion sufficient to establish the mistake, inadvertence, surprise or excusable neglect of sec. 4229, Rev. Codes?

It appears from the record that all of the evidence presented to the district court was documentary, and it is argued by appellant, and we think rightfully, that while the vacation of the judgment, or granting of a new trial is a matter in the

discretion of the trial court, and that unless there is a manifest abuse of that discretion the order will not be reversed on appeal, still this rule is to be governed by the rule that in such cases (hearing on documentary evidence alone) this court will make an original examination of the evidence as contained in the record and will exercise its judgment and discretion the same as if the case were being presented to us in the first instance.

We have carefully examined all of the affidavits presented in the transcript and have arrived at the conclusion that the court below did not abuse its discretion in setting aside the default and vacating the judgment, provided there was a sufficient showing made to entitle the court to say that the respondent had a meritorious defense.

The affidavits of respondent upon which the order and judgment of the trial court were based show, in substance, that respondent became a naturalized citizen of the United States on July 1, 1901; that he is now of the age of thirty-six; that about sixteen years ago he emigrated from Austria; that he is a Slavonian or Bohemian; that he does not speak or readily understand the English language; that he can barely read and cannot write the English language; that his occupation has been that of a common laborer; that about 1885, he made application and homestead entry on the northeast quarter of section 26, township 36 north, of range 3 W., B. M., and has at all times since resided upon, cultivated and improved said land; he made final proof upon the same as a homestead on the 1st day of August, 1904, and on the 1st day of August, 1904, patent and fee to said land was issued to him; that between the 1st of January, 1904, and the 1st of July, 1904, the board of county commissioners of Nez Perce county, prior to the issuance of the patent, attempted to assess and levy against said tract of land certain taxes for state, county, school and municipal purposes; that said proposed and attempted levy of taxes was illegal and void for the reason that the title was still in the government of the United States of America; that thereafter certain proceedings were had and done whereby said taxes so levied and assessed against said

tract of land became delinquent, and thereafter the said county, at a certain sale for property delinquent for taxes for the year 1904, became the purchaser thereof, and thereafter it attempted to and did sell the said tract of land to one L. F. Parsons on the 17th day of July, 1908; that the purchase of said land from said county for delinquent taxes for the year 1904, on July 11, 1905, and the attempted sale of the same to the said Parsons on July 17, 1908, is and was illegal and absolutely void; that the respondent has been in the open, notorious and actual possession of said land, cultivating and improving the same, and has continuously paid county, state, school and municipal taxes thereon, including poll taxes assessed against affiant, for the following amounts: Taxes for 1905, $50.64; taxes for 1907, $46.03; taxes for 1908, $70.57; taxes for 1909, $65.12; that the homestead is now of a reasonable value of $5,000; that about the 19th of January, 1910, a copy of the complaint and summons in this action was delivered to respondent by one G. W. Goldner, residing near Lapwai, Idaho; that at that time affiant did not understand or fully comprehend what the action was about or the object of the same and requested Goldner to read the complaint to him and explain it; that said Goldner attempted to do so, and told affiant that it was a suit concerning taxes which he had not paid to Nez Perce county, and that he had better come to Lewiston and look into the matter; that John O. Bender was attorney for the plaintiff, and that affiant had better come to see Bender about it; that within two days thereafter affiant came to Lewiston and went to the office of the county recorder, showed a copy of the complaint and summons to W. L. Gifford, and asked him what the papers were about; that said Gifford replied that it was apparently a suit brought for taxes which had not been paid, and that John O. Bender was attorney for the plaintiff in the action and he had better go down and see him about the matter, and perhaps affiant could settle the matter with him; that affiant went to the office of Bender and showed him the copy of the complaint and summons and asked him what these papers were for and what this action was about, and Bender replied, "It is a suit for

Opinion of the Court—Woods, District Judge.

taxes that you have not paid on your property''; that affiant replied, ''I don't owe any taxes on my property''; that said Bender then stated, ''If you don't owe any taxes on this property, it is all right and you can go home; you had better go back to the courthouse, and if the taxes haven't been paid by you, perhaps or maybe they will let you pay the taxes, but if you don't owe any taxes on the land, it will be all right for you to go home''; that said Bender in making such statements wilfully, wrongfully, knowingly and fraudulently concealed from affiant the true purpose and intent for which this suit was brought, and the fact that he was trying to enforce a tax deed based on taxes levied and assessed against said property for the year 1904, and so made the statements that he did to allay suspicion existing in the affiant's mind and prevent any investigation being made by him to ascertain the true status of his property relative to any taxes due against the same; that affiant then went to the assessor's office in the courthouse, where he met Fred Wood, the deputy in said office; that there affiant made substantially this statement to Wood: ''God damn; they tell me I no pay my taxes. Do I owe any taxes?'' that said Wood, thinking affiant referred to taxes for the year 1909, turned to the records and showed affiant that he had paid and been receipted in full for the taxes on his property for the year 1909, and said Wood stated to affiant that there were no taxes due against his property at that time as shown by the records in the assessor's office, and further stated to the affiant that he could go home, that there was nothing to it, or words to that effect; that affiant placed full and complete credence in the statements so made by said Wood, and at that time and up to the 21st of May, 1910, fully believed that there were no outstanding or unpaid taxes against his property of any kind, and believed from the statements so made him by said Wood that said Wood meant that there were no taxes of any kind against said property for any year since the date of the entry and acquisition of said tract of land by affiant; that at the time of said conversation, affiant had no knowledge of his

property having been attempted to be sold or having become delinquent for the taxes of the year 1904, and fully believed that there were no taxes whatever due at that time against said property, and so believing returned to his home and paid no further attention to the matter; that on the 21st of May, 1910, by writ of execution he was by the sheriff of Nez Perce county ousted and ejected from said premises and home, and one John W. Hardin was placed in charge of said premises and every part thereof and remains in actual possession of the same; that when the execution was served on him, affiant did not know why the same was done or by what authority; that thereupon affiant immediately came to Lewiston and employed counsel in this case; that he is entirely unfamiliar with the laws of this state relative to the levy and assessment and collection of taxes, is a foreigner, unfamiliar with the laws of the state of Idaho, uneducated, unable to read and write or distinctly understand the English language.

W. L. Gifford states that he is acquainted with Joe Wrble; that he remembers his coming into his office in the courthouse, being the office of the county recorder of Nez Perce county, Idaho, and exhibiting to affiant a copy of the complaint and summons in the action wherein L. F. Parsons was plaintiff and Joe Wrble defendant, and that said Wrble at that time asked affiant the whereabouts of said Parsons, and affiant thinks he stated to Wrble that Parsons was either at Moscow, Idaho, or near Weippe in Nez Perce county, and that John O. Bender was the attorney in the action and that he had better go and see Bender and he might possibly be able to settle the matter with Mr. Bender.

Fred H. Wood states on oath that about the 21st day of January, 1910, he was deputy assessor and tax collector in Nez Perce county, Idaho, was personally acquainted with Joe Wrble; that about January 21st, 1910, said Wrble came into the assessor's office and in an excited manner said, "God damn; they tell me I no pay my taxes on my land. Do I owe any taxes on my land?" that affiant supposed he had reference to the taxes for the year 1909; that prior to that

time the said Joe Wrble had fully paid all of the taxes assessed against him in the assessor's office and receipt had been issued to him for that year's taxes; that affiant turned to the records of taxes for the year 1909, showed said Wrble that his taxes were paid for that year and that he had received receipt therefor; that affiant stated to him that so far as the records in the office showed, there were no taxes owing by him on his homestead land, and for him to never mind what people told him about owing taxes on the land, because he didn't, and for him to go home and pay no further attention to the matter, as everything was all right.

Clay McNamee states on oath that he is a resident and practicing attorney in Nez Perce county, Idaho; that he has examined the complaint in this action and all of the records and files therein; that he has examined the records of Nez Perce county touching all matters in regard to the levy and assessment of taxes against the said Joe Wrble for the year 1904 and subsequent thereto, all proceedings had and done by the respective county officers of said county relative to the sale of the real estate belonging to Joe Wrble and delinquent taxes for 1904 and all proceedings leading up to and including the execution and delivery of the tax deed to said property by said county to one L. F. Parsons; that from his examination of the records and files in said action and other public records, he fully and honestly believes that the defendant has a complete, full and meritorious defense to all of the matters and things set forth in the complaint and has so advised the said Joe Wrble as his attorney. He further states that he is fully convinced that the levy and assessment of taxes for the year 1904 against said property was illegal and void and all subsequent proceedings leading up to the execution of said tax deed to said Parsons were and are illegal and void.

This comprises the showing made by the respondent.

The appellant produced the affidavit of John O. Bender, stating, in substance, that affiant is attorney for the plaintiff in both of the cases entitled L. F. Parsons against Joe Wrble and John Wrble; that he has read the affidavits of the defend-

ants in each of these cases and makes this affidavit in denial of some of the facts stated therein.   Affiant states that at the time Joe Wrble came into his office in Lewiston, about January 21, 1910, said Wrble had come from the recorder's office where he had been making inquiry about these cases; that W. L. Gifford, the recorder, at the request of said Wrble, looked at the delinquent list and tax sales in his office and found that the property involved in these cases had been sold for taxes for the year 1904 to Nez Perce county, and thereafter a certificate of such sales had been assigned to the plaintiff Parsons; that said recorder told said Wrble that said land had been sold to Nez Perce county for delinquent taxes for the year 1904, the certificate of such sales had been assigned to the said L. F. Parsons, and told said Wrble where Parsons could be found—either in Moscow or in the Weippe or Musselshell country; also told him that this affiant was the attorney for said Parsons and where he could find him; that thereupon said Wrble came to the office of affiant and asked affiant what these cases were about; that affiant in the presence of Bruce Hersey told said Wrble that these suits were brought against him and his brother, John Wrble, because they failed to pay their taxes four or five years before that time, and that deeds had been issued to L. F. Parsons who claimed to be the owner of the property on account of said deeds; that affiant was the attorney for said Parsons in said suits and told Wrble in the presence of Bruce Hersey that he had better employ an attorney to appear for him and his brother; that said Wrble said he did not want any attorney, that he had paid all of his taxes; that his brother had paid all of the taxes on their land and that they had receipts for the payments at home; that thereupon affiant told said Wrble that if they had paid their taxes and had receipts for such payments, they had a good defense in said suits; that he had better employ an attorney to set up such defense; that affiant told said Wrble at said time that there were thirty other attorneys in Lewiston; that this affiant was against him in this action; that he should go to some other attorney and not take affiant's word for anything in these suits; that affi-

ant repeatedly told said Wrble at said time to go and get some other attorney in said cases and set up whatever defense he had in them; that he told said Wrble to get another attorney at least six times in said conversation, and also told him to go to the recorder's office and he would find out that said property had been sold because he had failed to pay the taxes on it; that thereupon said Wrble left the affiant's office and did not say whether he was going to the courthouse or to employ an attorney to appear in the case; that it is not true, as stated in the affidavit of said Joe Wrble, that the said Bender then stated, "If you do not owe any taxes on this property it is all right and you can go home," but that this affiant did state to said Wrble that if he did not owe any taxes on his property he had a good defense in the case and he had better employ an attorney to set up such defense; that it is not true that this affiant stated, "You had better go back to the courthouse, and if the taxes have not been paid by you, perhaps or maybe they will let you pay the taxes, but if you don't owe any taxes on the land, it will be all right for you to go home," but this affiant did state at said time that said Wrble could find from the recorder's office that the taxes on said land had not been paid and that he had better go there and look the matter up; that affiant did not know at said time that said Wrble had been to the recorder's office and that the recorder had told him that the taxes had not been paid and that the property had been sold. Affiant states that when said Wrble told affiant that he had paid the taxes for each year and had receipts at home for them, said statement by said Wrble was false and that he knew it to be false. As stated in their affidavits in this case, they paid taxes on the land for the year 1903 and failed to pay the taxes for the year 1904; paid them for the year 1905 and failed to pay for the year 1906, and paid them for the years 1907, 1908 and 1909. Affiant further states that he is the owner of an undivided one-fourth interest in said land and that the said Parsons conveyed to him such interest; that the said Parsons and this affiant have entered into a contract with one John W. Hardin to sell to him said land at $20 per·

acre, and that said Hardin has paid a part of said considera-
tion to said Parsons and this affiant; that each tract of said
land is not worth $5,000 nor to exceed the sum of $3,500 and
that there is a $500 mortgage against the land claimed by
Joe Wrble. Affiant states that at the time Joe Wrble had
said conversation with Fred Wood, he knew that said land
had been sold for taxes, because before that time the recorder
had told him about the matter; that affiant had told him to
the same effect; that at the time of the conversation with said
Wood, he had examined the complaint in these actions; that
these complaints had been read to him and explained by the
constable when they were served upon him, and said Wrble
knew that the action could not be brought for taxes for the
year 1909, for which year Fred Wood told Wrble his taxes
had been paid. Affiant further says that at the time said
taxes were levied and assessed against said property and prior
thereto, they had proven up on their homesteads and final
certificates had been issued to them by the United States for
said land, and that said land was subject to taxes for the year
1904. Affiant denies that any statements made by him to
said Wrble concealed from said Wrble any facts in these
cases or concealed the true purpose and intent for which said
suits were brought, or concealed "the fact that he was trying
to enforce a tax deed based on taxes levied and assessed
against affiant's property," but alleges that he fully and
fairly presented all of the facts to the said Joe Wrble in
said conversation and urged him to employ another attorney
to appear in said cases and set up whatever defense they
might have; that he told him there were thirty other attor-
neys in Lewiston and for him to go and employ an attorney
and urged him to go to the courthouse and look the matter
up fully so that he would understand what the case was
against him; that the said Joe Wrble understood what the
suits were, and understood that his land and the land of his
brother had been sold for taxes and that deeds had been
issued to said Parsons by Nez Perce county, and that these
suits were brought for the purpose of quieting title on said
deeds.

Bruce Hersey states under oath that he has read the foregoing affidavit of John O. Bender, knows the contents thereof; that he was stenographer and typewriter in the office of said Bender at the time of said conversation between said Joe Wrble and said Bender; was present and heard said conversation and knows the facts stated in the affidavit of said John O. Bender pertaining to said conversation are true, and especially and particularly the fact that said Bender urged said Wrble to employ an attorney in said cases and set up whatever defense he had in them, and repeatedly told said Wrble that there were other attorneys he could employ in Lewiston; told him the action was brought to quiet title on tax deeds because they had failed to pay their taxes on their land four or five years ago, and urged him to go to the courthouse and look the matter up; that the said Joe Wrble stated that he did not want an attorney; that he had paid taxes for every year and had receipts at home for them, and said Bender explained fully to said Wrble where he could find out about the matter in the courthouse; that said Bender did not urge said Wrble to go home without employing an attorney to set up a defense in said suits, but repeatedly urged and insisted that Wrble should employ an attorney in said cases.

W. L. Gifford states on oath, in substance, that he is the county recorder of Nez Perce county; that he remembers the time Joe Wrble came into his office and had with him the complaint and summons in these cases, or what he supposed to be such papers; that at that time he looked into the record containing the delinquent taxes and sales of property for delinquent taxes and found that this land had been sold for taxes for the year 1904 to Nez Perce county, and that certificates of these sales had been assigned to L. F. Parsons and deeds issued to him for the same; that he told said Wrble at that time that this land had been sold for delinquent taxes for the year 1904, and that Parsons held the deeds for the same and he supposed these suits were brought on this matter, or words to that effect; that he told the said Wrble that Parsons could be found in Moscow or in the Weippe or Mus-

selshell country; that John 'O. Bender was his attorney and where he could be found.

In reply to this showing, said Joe Wrble made affidavit in substance as follows: That he has read the affidavits of John O. Bender and his former stenographer and office clerk, Bruce Hersey, in which said Bender swears that he told this affiant repeatedly and urged him to employ an attorney to represent him in the cases of L. F. Parsons against himself and L. F. Parsons against John Wrble; that the same is wholly and absolutely untrue; that said Bender did not once advise affiant to engage or employ any attorney, but, on the contrary, stated to affiant the facts as alleged in his affidavit previously filed in support of the motion to vacate and set aside the judgment heretofore rendered. Affiant again states that he was misled, not only by the statements made to him by said Bender, but as well by his action and manner during the talk that affiant had with him; that when affiant returned to the courthouse after leaving said Bender, he went directly to the assessor's office and saw Mr. Wood, the deputy in said office, and after what transpired there, affiant returned to his home and to his brother and gave himself no further concern, thinking the matter entirely settled; that he has read the affidavit made in behalf of plaintiff by W. L. Gifford, the auditor of the county, in which said Gifford states that he told affiant that the land had been sold for taxes for the year 1904 and that tax deed was held by L. F. Parsons for the same. Affiant has no recollection of such statement being made to him by said Gifford; that if made, he misunderstood the same, for at the time of the talk with Mr. Gifford affiant was very much excited and wrought up over the matter; that after leaving the auditor's office, being informed by Mr. Gifford that Mr. Bender was the attorney representing the plaintiff in the action, he went direct to Mr. Bender's office and there had the conversation heretofore testified to in this affidavit, and after said conversation he went direct to the assessor's office, and being satisfied as to the conditions found there, and understanding that no taxes were due from him, returned home as heretofore stated.

This is an action to quiet title and the complaint does not disclose in what manner or by what means the appellant claims to be the owner of the real estate involved in this action.  The answer of respondent which is tendered, in addition to the affidavit of Clay McNamee, one of the attorneys for the respondent (which can be treated as an affidavit of meritorious defense) denies that the appellant is now or ever has been since on or about the 17th day of July, 1908, or for any other period of time whatever, the owner of all or any part of the northeast quarter of section 26, township 36 north, of range 3 W., B. M., and alleges for an affirmative defense that defendant on November 25, 1895, made homestead entry in the Lewiston land office for the northeast quarter of section 26, township 36 north, of range 3 W., B. M., and at all times since and up to the 21st of May, 1910, has continuously resided upon, occupied, tilled and cultivated the said tract of land as his home and in accordance with the homestead laws of the United States, and within the time allowed by law for making final proof on said tract of land, and on May 4, 1903, the final certificate was issued by said land office to the respondent, and thereafter on August 1, 1904, patent in fee was issued to the respondent by the United States, and at all times since the 1st day of August, 1904, he has been and now is the owner in fee simple of said tract of land and every part thereof.

The respondent further alleges in said answer, assuming that the only claim of appellant in this action would be by tax title, certain specifications as to the way certain taxes were assessed and levied by the board of county commissioners against said tract of land for the year 1904, proceedings by the assessor of Nez Perce county, the auditor of said county, the tax collector of said county, which it is claimed by the respondent were unlawful and which rendered any sale for delinquent taxes assessed against said tract of land for the year 1904 invalid, and also alleging that certain steps at and before the execution of the tax deed taken by some of these different county officials were illegal, and that the deed issued to the appellant was void.

We do not propose to point out wherein, in the judgment of this court, some of the affirmative allegations of the answer are sufficiently pleaded, while others are admitted by the respondent in this action to be insufficiently pleaded, but we do hold that in an action of this character the said amended answer so tendered to the trial court and by it allowed to be filed in connection with the affidavit of Mr. McNamee, one of the attorneys for the respondent, is a sufficient compliance with statutory enactment and the decisions of the courts, and that the answer as a whole shows a defense upon which respondent is entitled to be given his day in court.

The order and judgment of the district court will be *affirmed,* with costs in favor of respondent.

Ailshie, Presiding J., and Sullivan, J., concur.

_____

(March 30, 1911.)

John O. Bender and D. E. Hodge, for Appellant.

Clay McNamee, for Respondent.