(April 30, 1915.)

HARRY G. DARWIN, Respondent, v. EDYTHE JORDAN DARWIN, Appellant.

[149 Pac. 467.]

DEFAULT—SETTING ASIDE—DISCRETION OF COURT.

1. *Held*, that the court did not abuse its discretion in refusing to set aside the default entered against the appellant.

APPEAL from the District Court of the Second Judicial District for the County of Nez Perce. Hon. Edgar C. Steele, Judge.

Motion to set aside default entered against the defendant. Motion denied. *Affirmed.*

Miles S. Johnson, for Appellant.

"Since a judgment by default is not favored in divorce suits, the courts are specially inclined to interpose by opening or setting aside such a judgment and giving defendant a day in court so that the merits of his defense may be passed on." (14 Cyc. 714; 7 Ency. Pl. & Pr. 141; *McBlain v. McBlain,* 77 Cal. 507, 20 Pac. 61; *Wadsworth v. Wadsworth,* 81 Cal. 182, 15 Am. St. 38, 22 Pac. 648; *Cohn v. Cohn,* 85 Cal. 108, 24 Pac. 659; *Mulkey v. Mulkey,* 100 Cal. 91, 34 Pac. 621; *Smith v. Smith,* 145 Cal. 615, 79 Pac. 276; *Hyser v. Hyser,* 53 Colo. 199, Ann. Cas. 1914B, 356, 124 Pac. 346; *Pringle v. Pringle,* 55 Wash. 93, 104 Pac. 135; *Young v. Young,* 17 Minn. 181.)

"The discretionary power of the trial judge, upon an application to open a default, means a sound and impartial discretion, and should be resolved, in case of doubt, in favor of the application." (*Hamilton v. Hamilton,* 21 Ida. 672, 123 Pac. 630; *Parsons v. Wrble,* 19 Ida. 619, 115 Pac. 8.)

Henry S. Gray, for Respondent.

"The courts will generally hear motions to vacate divorce judgments on the same grounds and conditions as any other judgments, except, perhaps, that they proceed with greater caution and with more anxious care for the intervening rights of strangers." (Black on Judgments, 2d ed., sec. 320; 2 Bishop, Marriage & Divorce, sec. 750; *Parish v. Parish,* 9 Ohio St. 534, 75 Am. Dec. 482.)

This court has taken the same attitude with respect to such applications in divorce actions as it has in other actions, and has refused to disturb the action of the trial court. (*Hamilton v. Hamilton,* 21 Ida. 672, 123 Pac. 630; *Richards v. Richards,* 24 Ida. 87, 132 Pac. 576.)

Where applications involve questions of law alone, no discretion on the part of the trial court is involved, but where the application presents a question of fact only, the application is then directed to the discretion of the court. (*Humphries v. Idaho Gold Mines etc. Co.,* 21 Ida. 126, 120 Pac. 823, 40 L. R. A., N. S., 817.)

SULLIVAN, C. J.—This is an appeal from an order deny·
ing defendant's motion to open, vacate and set aside a de-
fault and decree entered against her in an action for divorce,
and permit her to appear and answer to the merits. The
ground of said action was cruel and inhuman treatment. The
denial of said motion by the court is the only error assigned.

The record shows that the complaint was filed August 3,
1914, at a time when the defendant was in the east on a visit,
having left Lewiston, Idaho, the latter part of May, 1914. A
summons was issued shortly after the complaint was filed
and placed in the hands of the sheriff for service and was
returned unserved on August 14, 1914. On August 16th
this plaintiff filed an affidavit and obtained an order for
service for an *alias* summons out of the state, to wit, in
Boston, Mass.     Said *alias* summons was issued and was
thereafter returned unserved. On September 15, 1914, the
plaintiff filed an affidavit for the publication of summons,
making application thereunder to have the former order for
service of *alias* summons set aside, and on said date obtained
an order for the publication of the said summons in the
"Lewiston Morning Tribune." The summons was pub-
lished in said newspaper for the time prescribed by law, but
proof of such publication and the mailing of the copy of the
summons and complaint was not filed, for the reason stated
in the affidavit of the attorney for the plaintiff, namely, that
prior to the completion of such publication a copy of the
*alias* summons and complaint was personally served on the
defendant at Lewiston, Idaho, by the sheriff of Nez Perce
county. On October 10, 1914, the defendant arrived in
Lewiston accompanied by a Mrs. Baker, a mutual friend of
the parties to said action. Appellant's arrival was without
notification to her husband. The appellant and the mutual
friend remained in Lewiston until the morning of the 14th
of October, spending the day time at the Darwin home and
the nights at the Bollinger Hotel, except the night of the
13th, which they were permitted to spend at the husband's
ranch. It appears that during those three days the conversa-
tion was almost continuously on the subject of divorce pro-

ceedings, appellant urging that the proceedings be dropped or postponed and respondent insisting that they be carried on to final determination in court.

On the afternoon of the 13th of October, the appellant was personally served with the summons and a copy of the complaint, and after receiving them they were placed on her husband's desk and thereafter he sent them to her by mail. The summons was also published in the "Lewiston Morning Tribune" for the time prescribed by law, and a copy of the summons and complaint was mailed to the appellant, directed to her brother's residence, No. 12 Fairland St., Roxbury, Mass. The record thus shows that she was served with summons personally and also by publication. It appears from the record that the service of summons was completed on November 2, 1914, and that default was entered on the 7th of November. The appellant failed to make any appearance whatever.

Thereafter on the 16th of November, the court having heard the evidence, made and entered finding of facts, conclusions of law, and entered a decree in favor of the respondent, awarding him the divorce prayed for, and also approving, by way of property settlement, a certain trust agreement wherein and whereby the plaintiff made provision for the defendant, to be operative in case of his death. The decree also included provision for the defendant's support and maintenance during the plaintiff's life.

On December 9, 1914, the appellant made a motion and filed certain affidavits whereby she sought to have vacated said default and decree, alleging in her affidavit that on the evening of October 13, 1914, the respondent induced her to return to Boston by promising if she would do so he would drop the proceedings for the divorce and would send for her the following spring. This statement made in the affidavit of the appellant was emphatically denied by the respondent and he states in his affidavit that he never heard of any such promise until he read it in the affidavit. Lengthy affidavits were filed by the appellant and the respondent on said motion. In fact, the affidavits filed cover many pages of

the record, and the record also contains many letters written by the appellant to the respondent and letters written by the respondent to the appellant. The record contains over 100 pages of typewritten matter.

After hearing arguments on said motion, based on the affidavits and record, the trial court entered an order denying the appellant's motion and application, and the only question presented is whether the court erred in denying said motion.

From the whole record we are satisfied that the trial court did not err in holding that the respondent did not agree with the appellant that if she would return east he would drop proceedings for divorce and send for her the following spring, and that appellant was properly served with summons and knew of the pendency of said action and failed to appear and answer, and that no deception was practiced by respondent in said matter.

It will serve no good purpose to review the lengthy affidavits and letters presented in the record which were considered on the trial. We therefore shall not attempt to review them in this opinion, since it is clear to us that the trial court did not abuse its discretion in denying said motion.

Each party to pay his own costs on appeal.

Morgan, J., concurs.

BUDGE, J., Dissenting.—I am unable to agree with the majority of the court in the conclusions reached in this case. The facts as set out in the majority opinion, so far as they relate to the matter discussed, are correctly stated, but for the purpose of making my position clear and in support of my contention that a different rule of law should be applied in cases of this character, certain additional facts which appear in the record will be briefly referred to.

The complaint of the respondent was filed on August 3, 1914, in which it is alleged, among other things, that for more than four years last past appellant treated respondent in a cruel and inhuman manner, rendering his life burdensome and inflicting upon him grievous bodily injury and grievous

mental suffering, anguish and pain; thereafter setting out certain specific acts of extreme cruelty, among which appellant is charged with over-indulgence in intoxicating liquors and while under the influence thereof, with indiscreet acts, the use of violent, abusive and scandalous language; that in the spring of 1910, appellant went to Spokane, and while there conducted herself in such a manner that the management of the hotel requested her removal; that at various times appellant threatened and sought the life of respondent; that appellant, in the summer of 1912, against the protest of respondent, went to Atlantic City, New Jersey, where she resided while respondent was in England on business; that she refused to write to him, and conducted herself, while in Atlantic City, in a reprehensible manner, frequenting cafés and places of low repute with divers persons, and remained in such places to unseemly and late hours, thereby subjectng herself to scandalous comment and injurious criticism; that in the spring of 1913, while at their home in Lewiston, appellant ridiculed and derided the people of Lewiston, and used profane and vulgar language on many occasions in the hearing of their minor child; that in the spring of 1912 appellant indulged herself excessively in intoxicating liquors, exhibiting herself upon the streets and in houses in Lewiston and Clarkston, Washington, in an intoxicated or semi-intoxicated condition; that she was dissipated, reckless and extravagant in her manner.

The appellant in her affidavit of merit, which was filed in support of her motion to set aside the default and vacate the decree, specifically denies each and every allegation of the respondent's complaint, and among other things states that upon the occasion of her visit to Spokane, during the spring of 1910, she was taken by her husband to Crystal Springs Sanitarium at Portland, Oregon, where she was treated for a serious nervous ailment for a period of three months, after which she was accompanied to her home by a trained nurse, who remained with her for more than a month.

Referring to the allegation in respondent's complaint that appellant visited Spokane against his wishes, and bearing

upon her trip to Spokane, we find in the record the following
telegrams:

　　　　　　　　　"Spokane, Washington, March 13, 1910.
"Mr. Harry G. Darwin, No. 15 Williams St.,
　　"New York.
　　"Marie left me Wednesday March second. Became so
afraid sleeping in house alone that I have not slept for four
nights consequently stomach knocked out. Mrs. Buck took
Gilbert and I will await your return here at Spokane Hotel.
Wire when you will start. Not alone; have friends here.
　　　　　　　　　　　　　　　　　　　"EDIE."

"(Day Message)　　　　　　New York, Mch. 14, 1910.
"Mrs. H. G. Darwin,
　　"Hotel Spokane,
　　　　"Spokane, Wash.
　　"Will wire tomorrow when will leave. Remain at Spokane
until I arrive.　　　　　　　　　H. G. DARWIN,"

"(Night letter)　　　　　　New York, Mch. 14, 1910.
"Mrs. H. G. Darwin,
　　"Hotel Spokane,
　　　　"Spokane, Wash.
　　"Leave Thursday afternoon. Due Hotel Ryan, St. Paul
Saturday morning. Write fully and wire me there. Due
Spokane Monday morning. Will advise as to possible stop-
over Spokane from St. Paul. Telephone Buck regularly as
to Gilbert. Advertise for maid Spokane papers to return
with us. Get all fun possible from visit but be reasonable
and judicious. Who is with you.
　　　　　　　　　　　　　　　　"H. G. DARWIN."

　　The appellant was charged by her husband with going to
Atlantic City against his will and there conducting herself
in an extremely reprehensible manner, where it is alleged she
was extravagant, wasteful and indulged in intoxicating
liquors to excess. We find as a part of appellant's affidavit
of merit, and in contradiction to this charge, some twenty-
two letters and telegrams which she received from her hus-

band while in Atlantic City. The following excerpts will serve as samples:

"Waldorf Hotel, Aldwych, W. C.
"London, June 25, 1912.

"Dearest Ones,

"Your cable from Atlantic City came last evening but the stupid clerk did not give it to me until this morning. At the same time gave me one that arrived last Wednesday. . . . . Hug my dear little man *hard* for me, and then he can turn around and do it to you, also for me. . . . ."

"Hotel Longacre, New York,
"Aug. 14, 1912.

"Dearest:

" . . . . Your yesterday letter indicates that you are tired of Atlantic City, but there is no other place I know of now, where you can live any cheaper, and as far as I can see, you had better stay on for a week or so at least.

"With lots of love,                    "DADDA."

It appears from the record that the appellant went east in May, 1914, on account of serious illness, in obedience to the wishes of her husband. As evidence of appellant's mental condition just prior to his visit east, we find in the record the following communication addressed to her brother, Joseph G. Curry, Roxbury, Mass., of date May 2, 1914, signed by respondent, in which he says, among other things:

"Your sister, and my wife, is again in such a very nervous condition that her friends and her physician insist that she must be restrained and confined, for her own safety and for that of those around her. I feel that if she is placed in the only place we have near here, the state asylum, she will not survive the shock, but that if she can be returned to the east, where she can see her family and friends, and be among more congenial surroundings, she will regain at least a degree of nervous health which may enable her to live on for many years yet, and perhaps, after her change of life is over, restore her to complete health."

A little over two months after respondent had sent his wife east broken down in health, a mental wreck and a fit

person, in his judgment, for the state asylum, he instituted divorce proceedings against her, in which he sought an absolute separation and the custody of their minor child. This fact, in connection with others recited in the record, and the conduct of the respondent in placing the appellant in a sanitarium for treatment for nervous disorder, establishes conclusively to my mind that the appellant was not in such a mental condition that she was capable of coping with her husband in his efforts to secure a separation and the sole custody of their minor child, of which facts I think the respondent was fully cognizant.

When she returned in October, 1914, it is clear to my mind, from a careful consideration of the entire record, that she had not recovered and was not capable of fully comprehending the nature of the divorce proceedings which had been instituted against her, and that she returned east with an understanding upon her part that the proceedings would be dismissed. We find in the affidavit of Annie E. Baker, filed in support of the affidavit of appellant, made on January 6, 1915, among other statements, the following: "I was present at the house of Harry G. Darwin in Lewiston, Idaho, at which time his wife, Edythe Jordan Darwin, was also present; that both Mrs. Darwin and myself remained overnight at said house; that during said evening I heard certain conversation between Mr. and Mrs. Darwin relative to divorce proceedings which he had commenced against her, and I heard him say to her that if she would return to Boston he would drop the case and that he would give her what money he was able to raise and would send for her in the Spring." It is true that this same Mrs. Baker made another affidavit on January 15, 1915, in which she says, among other things: "Upon mature deliberation, and after refreshing my memory as to the various occurrences and conversations that took place during the time I was at Lewiston, Idaho, . . . . I desire and request that the portion of my said former affidavit, . . . . be changed and modified in the following respects, . . . . That I heard much conversation between Mr. and Mrs. Darwin during the said three days, . . . . I know that Mrs.

Darwin repeatedly urged Mr. Darwin to drop the proceedings, and that Mr. Darwin was equally insistent that they should be carried on, . . . . that I find myself unable to repeat anything definite that either of the parties said, and I have so stated to Mr. Darwin in a letter written to him on December 10th, 1914; and I do not wish to be understood as saying, upon my oath, that I heard Mr. Darwin tell Mrs. Darwin that if she would return to Boston he would drop the case and that he would give her what money he was able to raise and would send for her in the spring; for I cannot swear that I heard Mr. Darwin say any such thing. I may have obtained that impression solely through my conversations with Mrs. Darwin during the several days we were traveling together on our return to the east.''

Whatever doubt there may have been in the mind of the court with reference to the truthfulness of the Baker affidavit, should have been resolved in favor of the appellant.

There is abundant evidence in the record to show that appellant made every effort to bring about a reconciliation between herself and her husband, upon her return to Lewiston. There is also evidence in the record which shows that the respondent's conduct toward the appellant upon her return home was pleasant and affectionate, and not such as would indicate that he seriously intended to prosecute to a final determination the action he had instituted for a divorce.

It will be borne in mind that the default was entered November 7, 1914; that the decree of divorce was rendered on November 16, 1914; that the appellant was in the east when the default was entered and the decree granted; that she filed her motion to vacate and set aside the default and decree on December 9, 1914, during the same term of court that the default and decree were entered. Sufficient facts have been referred to, which would have justified the court in laying down what I consider the proper rule of law to be followed in cases of this character. In case of *Humphreys v. Ida. Gold Mines Develop. Co.*, 21 Ida. 135, 120 Pac. 823, 40 L. R. A., N. S., 817; this court said: ''The showing of mistake and excusable neglect is very slight in this case and extremely

meager on which to rest the order. On the other hand, however, under the rule so uniformly recognized, not only by this court, but by many other courts, that every reasonable doubt in such cases will be resolved in favor of a trial upon the merits, and that every fair presumption will be indulged in support of an order opening a default and allowing a trial upon the merits.''

In an action for a divorce, where a default has been taken, a much more liberal rule should be followed than in an ordinary action involving property rights, for the reason that the state, as well as the parties to the action, are interested in the marital relationship.

''The state is interested in the marriage relation, since this relation is promotive of morality and inures to the perpetuation of its citizens.'' (9 Am. & Eng. Ency. Law, 728.)

''In every civilized country marriage is recognized as the most important relation in life, and one in which the state is vitally interested. The right of the legislative department to determine upon what conditions and in what manner the marriage relation may be entered into, and, having been entered into, for what causes and in what manner it may be dissolved, is unquestioned. The well-recognized public policy relating to marriage is to foster and protect it, to make it a permanent and public institution, to encourage the parties to live together, and to prevent separation and illicit unions.'' (See Nelson on Divorce and Separation, vol. 1.)

''This policy finds expression in probably every state in this country in legislative enactments designed to prevent the sundering of the marriage ties for slight and trivial causes, or by the agreement of the husband and wife, or in any case except upon full and satisfactory proof of such facts as has been by the legislature declared to be a cause for divorce. Such provisions find their justification only in this well-recognized interest of the state in the permanency of the marriage relation. While an action to obtain a decree dissolving the relation of husband and wife is nominally an action between two parties, the state, because of its interest in maintaining the same, unless good cause for its dissolution

exists, is an interested party. It has been said by eminent writers upon the subject that such an action is really a triangular proceeding, in which the husband and the wife and the state are parties." (*Deyoe v. Superior Court,* 140 Cal. 476, 98 Am. St. 73, 74 Pac. 28.)

No divorce should be granted where the testimony offered in support of the allegations is not corroborated, and every reasonable opportunity should be afforded each of the parties to a full hearing upon the trial. The tendency of the courts of this country is now strongly in opposition to *ex parte* divorces, and the taking of default judgments in divorce cases should not be encouraged, and no technical rule of proceeding should be invoked in order to deprive either of the parties of an opportunity to present testimony in opposition to an application for a divorce; and this is more particularly true where minor children of the litigant and their custody are involved.

"Since a judgment by default is not favored in divorce suits, the courts are specially inclined to interpose by opening or setting aside such a judgment and giving defendant a day in court so that the merits of his defense may be passed upon." (14 Cyc. 714.)

"Where a default has been entered against a defendant, the court will readily set the same aside in order that defense may be interposed and the interests of the public protected by a trial upon the merits. Not only the parties but the public have an interest in the result of every suit for divorce, and the court should afford a hearing to protect the interests of the state." (7 Ency. Pl. & Pr. 141.)

"Not only can no divorce be granted upon the default of the defendant, or a finding of fact made by a referee, but the law inhibits the granting of divorces upon the uncorroborated testimony or admission of the parties. The parties to the action are not the only people interested in the result thereof. The public has an interest in the result of every suit for divorce; and the policy and the letter of the law concur in guarding against collusion and fraud; and it should be the

aim of the court to afford the fullest possible hearing in such matters." (*McBlain v. McBlain*, 77 Cal. 507, 20 Pac. 61.)

"In the present case there seems to have been an honest desire on the part of the plaintiff to present her side of the case; and while, in an ordinary action, the neglect shown might be sufficient to deprive her of a right to relief, yet in this kind of a case a more liberal rule should prevail." (*Wadsworth v. Wadsworth*, 81 Cal. 182, 15 Am. St. 38, 22 Pac. 648.)

"In discussing this matter we have limited our consideration to the rule as applied to actions for divorce. It is a matter of public policy that divorces should only be granted where the fullest opportunity has been afforded both sides to be heard, and then only when adequate cause for divorce is shown. Whether such adequate cause exists can only be disclosed after both sides have had an opportunity to present all their evidence. The public has an interest in having no divorce granted excepting for good cause, and it is this consideration of public interest which has largely entered into the formulation by the courts of a more liberal rule to be applied in relieving from default in divorce cases than applies in other cases, where property rights alone are involved." (*Smith v. Smith*, 145 Cal. 615, 79 Pac. 276; *Cohn v. Cohn*, 85 Cal. 108, 24 Pac. 659; *Mulkey v. Mulkey*, 100 Cal. 91, 34 Pac. 621; *Hyser v. Hyser*, 53 Colo. 199, 124 Pac. 346; *Pringle v. Pringle*, 55 Wash. 93, 104 Pac. 135.)

"The proper regulation and control of the marriage relation is of so much importance to society, the well-being of the community is so far involved in the permanence of this relation, that the state, through its courts, exercises a peculiar guardianship over marriage and divorce. Society, as represented by the state, has an interest in maintaining the rules, which have been prescribed by the proper authority concerning marriage and divorce, which interest it is the duty of the courts to protect.

"A divorce is not granted simply because the parties are willing that it should be, nor because the defendant makes default, or neglects to assert, or waives a defense.

"In proceedings of this kind, any course of action upon the part of a plaintiff, which is designed, and tends, and operates, to deprive or exclude a defendant from setting up and establishing a defense, which, if established, would prevent the granting of the divorce, is a fraud upon the administration of justice, as well as a fraud upon the defendant." (*Young v. Young,* 17 Minn. 181.)

In the hearing in the case at bar, upon the motion to set aside the default, no evidence was taken and the same was heard solely upon the affidavits of the appellant and respondent and corroborating affidavits of Annie E. Baker, a mutual friend, and Harry S. Gray, attorney for respondent.

This court, in the case of *Parsons v. Wrble,* 19 Ida. 619, 115 Pac. 8, laid down the following rule, where a hearing is had upon affidavits:

"It appears from the record that all of the evidence presented to the district court was documentary, and it is argued by appellant, and we think rightfully, that while the vacation of the judgment, or granting of a new trial is a matter in the discretion of the trial court, and that unless there is a manifest abuse of that discretion the order will not be reversed on appeal, still this rule is to be governed by the rule that in such cases (hearing on documentary evidence alone) this court will make an original examination of the evidence as contained in the record and will exercise its judgment and discretion the same as if the case were being presented to us in the first instance."

"The discretionary power of the trial judge upon an application to open a default means a sound and impartial discretion, and should be resolved, in case of doubt, in favor of the application." (*Hamilton v. Hamilton,* 21 Ida. 672, 123 Pac. 630.)

Where an action to set aside a default and vacate a decree is supported by an affidavit of merits, the respondent should not be permitted, under the practice of this state, to rebut said affidavit of merits by counter-affidavits reciting the testimony offered in support of respondent's complaint.

The respondent in this case, in his counter-affidavits, set out facts which, if true, would have been proper if presented upon the trial of the merits, but had no place in respondent's counter-affidavits and should not have been allowed or considered by the court. Courts will not try the merits of a case upon affidavits. (*Douglass v. Todd*, 96 Cal. 655, 31 Am. St. 247, 31 Pac. 623; 23 Cyc. 958.)

"A promise of plaintiff that he would not press the case to judgment, in violation of which plaintiff, without notice to defendant, enters a default, or secures a judgment against the latter in his absence, is good ground for vacating the judgment." (23 Cyc. 920.) This principle of law is certainly applicable to the case under consideration.

The refusal of the court to vacate the default and set aside the decree upon the application of the appellant placed upon each and all of said allegations contained in respondent's complaint the absolute stamp of truth and verity, and branded the wife and mother with being intemperate, of dissolute habits, uncouth and vulgar; a wife who had sought to take the life of her husband, the father of her child, an unfit person to care for and enjoy the custody and love of her offspring. She was not permitted to appear and file her answer and offer evidence to refute the serious allegations made against her, primarily by reason of the fact that her mental condition was not specifically assigned as a ground for vacating the default and setting aside the decree.

I think, in an action of this character, and under the authorities cited, the appellant should have had her day in court and been furnished, by order of the court, with sufficient funds to employ counsel and secure testimony for the purpose of establishing the facts set out in her affidavit of merit. I gather from the record that the appellant had no funds with which to employ counsel or marshal her witnesses. She had been deprived of the custody of her child. She was away from her friends and immediate relatives, with no one to counsel or advise her. She acted upon the suggestion of her husband, encouraged by their mutual friend, Annie E. Baker, and left the state with an action for divorce pending against her—

under what I believe, based upon the record in this case, to have been a positive understanding on her part, as far as she was capable of forming an understanding, that the divorce proceedings would not be pressed and that when she regained her usual health that she would be sent for by her husband and again enjoy the love and society of her child and the care and protection of her husband.

In an ordinary case it is true, as laid down in the majority opinion of this court, that the appellant having been notified by summons of the pendency of the action, and the time for demurring and answering having expired, the default was properly entered, and that she had not, under the technical rules of law applied in ordinary cases, set out sufficient facts in her affidavit of merit to warrant the court in refusing to exercise its discretion. But when we consider the situation of the parties, the interest of the state in the marital relationship, the mental condition of the appellant, the influences that were brought to bear to induce her to leave the state, the fact that she had been charged with drunkenness and associating with lewd people, had attempted the life of her husband, and was an unfit and improper person to have the custody of her child, and that the application to vacate the default and set aside the decree was made during the same term of court and within a very short time after the decree was granted, it seems to me that there was a sufficient showing to have justified the trial court and to justify this court in vacating the default and setting aside the decree and permitting this woman to make a defense to these charges.

In my opinion, the judgment of the trial court should be reversed, the default vacated and set aside and the appellant given an opportunity to be heard, and furnished sufficient means with which to employ counsel, secure the attendance of her witnesses, and such other and further relief as might be necessary in order that justice be done in this proceeding.

Petition for rehearing denied.