(June 7, 1904.)

## ROBY v. ROBY.

[77 Pac. 213.]

CASE HEARD ON DEPOSITIONS—WHEN RULE AS TO CONFLICT OF EVIDENCE DOES NOT OBTAIN—DIVORCE—WILLFUL DESERTION—WILLFUL NEGLECT.

1. Where a trial has been had entirely upon depositions, and the trial court has not seen and heard the witnesses, the appellate court is in as favorable position for judging of the truthfulness of the witnesses and the weight of the evidence as the trial judge, and will consider the same as if originally heard in the appellate court.

2. Where the husband establishes a new home and requests his wife to follow him to the new domicile, and furnishes her the means with which to travel, and she declines to take up her residence with him, the husband is not thereby guilty of deserting his wife.

3. Evidence examined and *held* insufficient to entitle the plaintiff to a decree of divorce.

4. A wife who willfully and without good cause refuses to follow her husband to the home and place of residence selected by him cannot obtain a decree of divorce from him because he fails to provide for her during the period of her refusal to reside with him.

5. Where the wife appeals in good faith and the district judge does not order the husband to pay a sufficient sum to defray the expenses of appeal, and it appears that the wife has not sufficient property or means for that purpose, this court will tax any deficiency against the husband to the end that justice may be done.

(Syllabus by the court.)

APPEAL from District Court of the Second Judicial District in and for the County of Nez Perce. Honorable Edgar C. Steele, Judge.

From a judgment denying and refusing a decree of divorce plaintiff appeals. Affirmed.

The facts are stated in the opinion.

George W. Tannahill, for Appellant.

Upon the question of willful neglect and desertion we respectfully refer to the following authorities: *Roycraft v. Roycraft,* 42 Cal. 444; *Washburn v. Washburn,* 9 Cal. 476; *Gill v. Gill,* 93 Md. 652, 49 Atl. 557; *Bergemier v. Bergemier,* 17 App. D. C. 481; *Howard v. Howard,* 134 Cal. 346, 66 Pac. 367; *Carey v. Carey,* 73 Cal. 630, 15 Pac. 313; *Vossburg v. Vossburg,* 136 Cal. 195, 68 Pac. 694-696; *Terrill v. Terrill,* 109 Cal. 413, 42 Pac. 137; *Duhon v. Duhon,* 110 La. 240, 34 South. 428. We also call special attention to an article in Central Law Journal of July 24, 1903, pages 63, 64, citing *Marsh v. Marsh,* 13 N. J. Eq. 281; *Harper v. Harper,* 29 Mo. 301; *Burns v. Burns,* 60 Ind. 259, and *Toulson v. Toulson,* 93 Md. 754, 50 Atl. 401, showing a relaxation of the rule as to the wife and more stringent to the husband. Upon the question of the payment of costs of appeal, we cite and respectfully refer the court to the following authorities: *Wisner v. O'Brien,* 56 Kan. 724, 54 Am. St. Rep. 604, 32 L. R. A. 289, 44 Pac. 1090; *Pleyte v. Pleyte,* 15 Colo. 125, 25 Pac. 25; *Lake v. Lake,* 17 Nev. 230, 30 Pac. 878; *Bohnert v. Bohnert,* 91 Cal. 428, 27 Pac. 732; *Larkin v. Larkin,* 71 Cal. 330, 12 Pac. 227; *People v. District Court,* 21 Colo. 251, 40 Pac. 460; *Rose v. Rose,* 109 Cal. 544, 42 Pac. 452; *Wolff v. Wolff* (Cal.), 37 Pac. 858.

Charles L. McDonald, for Respondent.

It is a well-settled rule that it is the policy of the law to dis-courage divorce suits and not encourage them. (*Stover v. Stover,* 7 Idaho (Hasb.), 185, 61 Pac. 462.) Where a wife refuses to accept the provisions made for her support by the husband, but selects her own place of residence in contraven-tion to his wishes, she cannot complain that he does not provide for her. (*Gray v. Gray,* 15 Ala. 779.) Willful neglect, whether accompanied with desertion or otherwise, is a distinct. ground for divorce. The neglect must be such as leaves the wife destitute of the common necessaries of life or such as would leave her destitute but for the charity of others. (*Washburn v. Washburn,* 9 Cal. 475; *Rycraft v. Rycraft,* 42 Cal. 444; *Page v. Page,* 51 Mich. 88, 16 N. W. 245; *Randall v. Randall,* 31 Mich. 194; Stewart on Marriage and Divorce, c. 281.) De-sertion consists in the actual ceasing of cohabitation with the intent in the mind of the offending party to desert the other. (*Morrison v. Morrison,* 20 Cal. 431; *Stein v. Stein,* 5 Colo. 55; *Bennett v. Bennett,* 43 Conn. 313; *Rose v. Rose,* 50 Mich. 92; *Davis v. Davis,* 60 Mo. App. 545; *Serjent v. Serjent,* 33 N. J. Eq. 204; *Lynch v. Lynch,* 33 Md. 328; *Ruckman v. Ruckman,* 58 How. Pr. 278; *Thomas v. Thomas,* 4 Kulp (Pa.), 328; Stewart on Marriage and Divorce, c. 253; 9 Ency. of Law, 2d ed., 766, 781.) Refusal of wife to accompany husband on change of his residence followed by actual cessation of matrimonial cohabitation and unattended by any excusing circumstance is evidence of desertion by the wife and grounds for a divorce. (*Hardenbergh v. Hardenbergh,* 14 Cal. 654; *Schuman v. Schu-man,* 93 Mo. App. 99.) The allowance of alimony in a divorce action is by our code left to the discretion of the trial court. (Idaho Rev. Stats., sec. 2472; 17 Century Digest, p. 967, and numerous cases there cited.)

AILSHIE, J.—This action was commenced in December, 1902, by the plaintiff praying a decree of divorce on two causes of action. The first cause of action charged willful neglect by the defendant to provide plaintiff with common necessaries of life for a period of more than one year immediately preceding

the commencement of the action, and the second cause was on the grounds of willful desertion. The defendant answered denying the charges, and by way of separate defense set up what was apparently intended as a plea of former adjudication. The case was referred to a referee who took the testimony and reported it to the court. After a consideration of the evidence the trial court made and filed his findings of fact and conclusions of law, which were adverse to all of plaintiff's allegations, and thereupon judgment was entered denying plaintiff any relief. This appeal is from the judgment and an order denying a motion for a new trial. Since the trial judge did not see the witnesses upon the stand and did not hear them testify, but determined the case on depositions, we are in as favorable a position to judge of their truthfulness and the weight to be given to the evidence as was the trial judge. In such case the rule that this court will not disturb the judgment where there is a conflict in the evidence does not apply. We have therefore made an original and independent examination of the evidence in the case with a view to determine its weight and preponderance. It is only necessary to recite briefly some of the leading facts of the case.

The plaintiff and defendant were married in 1883, and lived together on a farm until 1899, and reared three children. In 1899 they rented the farm and moved to the town of Orofino. In the spring or summer of 1900, the defendant went into the Pierce City mining district of Shoshone county, and found employment at what is known as the French Creek mines, at a salary of $40 per month in the winter time and $60 in the summer time, together with buildings and conveniences for a residence in the neighborhood of the mines. At this time, it seems, they had the two girls in school, one at Lewiston, Idaho, and the other at Uniontown, Washington, and the husband was paying the expenses. The youngest child, a boy about five years old, remained with the mother at Orofino. After securing employment and about the month of November, 1900, the defendant wrote to his wife and sent her the money necessary to pay her expenses in making the trip from Orofino to the place of his employment, and requested her to come to him. This the plaintiff did not do, but spent the money for other

purposes and replied to him that she would not live in there and claimed that she could not make the trip at that time of year, and that it was not a fit or convenient place for her to reside with her minor child. No further communication took place between the parties, but some time thereafter, and in the following year, the defendant caused to be published in an Orofino paper a notice to the effect that his wife had refused to live with him and that he declined to be further responsible for any bills contracted by her. Matters ran along in this condition without further communication between them until about October, 1901, when, according to the separate defense of defendant, an action for divorce between these parties was tried in the district court upon the same grounds involved in the present action and which resulted adversely to the plaintiff. No written or personal communication seems to have taken place between them from that time up to July, 1903, when this cause was tried. It seems that the husband was still willing to support and care for his wife if she would take up her residence with him at the domicile he had selected, and still he has never manifested any great anxiety to have her with him by writing or communicating with her in any way. On the other hand, the wife seems to have been willing to live with her husband at Orofino or on the farm, or some other place which might be suitable to her, but still she did not seem to be pining on account of his absence. In the meanwhile the respondent was steadily employed and using his earnings to defray the expenses of keeping the two girls in school, while the wife was going from place to place working for different families and earning a reasonably fair livelihood for herself and minor child. She had also been given some money and clothing by her father and some by other relatives and friends. It seems from the evidence that she was fairly well provided with apparel fit to wear in public and to keep up appearances, while, on the other hand, she was very scantily furnished with clothing for comfort and protection from inclement weather. She claims that at the close of the first trial she made overtures to her husband to settle their differences and live together, but the evidence shows conclusively that whatever effort may

have been made was done through her attorney and not by her personally. It would seem that the wife could better convey her feelings and sentiment in such a matter herself in person, and that if she were acting in good faith she would scarcely have cared to impose upon her attorney the delicate, if not pleasant, duty of wooing back her recreant husband. It is significant, at least, that there is nowhere shown any personal request or entreaty on her part for the return of her errant spouse. His absence, we are persuaded, was not very much "against her will." (*Schuman v. Schuman,* 93 Mo. App. 106.)

The principal point relied on by appellant is that owing to the ill-health of both herself and child the domicile selected by her husband was not a fit or proper place for them to live, and that the husband knew such fact and that his selection thereof amounted to a desertion. That by reason of the selection of such domicile and failure thereafter to provide for the wife while she lived apart from him he thereby became guilty of willful neglect. The evidence shows that for about five months of the year it is cold and disagreeable in the French Creek country and that the snowfall is from two to five feet and most of the travel for any distance is on snowshoes. It appears that other women live there contented with their families. It is no colder there than at many other places in the state. It appears, however, that very little is doing in society there and that the theater and ballroom have not yet made their appearance; nor have churches and schools yet been organized in the immediate neighborhood. These conditions, however, are not new to the pioneers of our western country. Counsel for respondent has so felicitously and eloquently and with reason portrayed this situation in his brief that we quote the following therefrom: "It is true, no doubt, that pleasanter places in which to reside could be found than that where the respondent was working, but the exigencies of business, the necessity of seeking employment where it can be found, frequently cause people to take up their residence at places where they would not live from choice. Yet to say that simply because of lack of society, churches, etc., at a place where a husband takes up his residence for the purpose of earning

money for the support of his family, the wife can refuse to follow him and at the end of a year secure a divorce from him for desertion, or on the ground of neglect, when he cannot afford to support her at any other place, would place a premium on lethargy and deaden the ambitions of a man who desired to seek a place in the van of the onward march of civilization, where conditions at the time would be crude, and perhaps for that reason inhospitable. If such were the law, how would our western prairies and valleys ever have been settled by the daring pioneers who have built up this magnificent country? The history of every western state shows how sturdy emigrants, taking their families and possessions traveling in the humble ox-wagon, journeyed hundreds of miles into the then unknown west and set up their household gods in places where naught but vastness surrounded them; society, neighbors, schools and churches being unknown quantities; and these brave men, and still braver women, were the nucleus around which has grown up a country unexcelled in everything which goes to make it great. Would not the settlement of our frontiers have been retarded for generations if a wife could have refused to accompany her husband for the flimsy reasons attempted to be shown by the appellant herein?" The wife gives as an additional reason for not following her husband that she was suffering, and had been suffering for many years, from some ailments common to her sex, and that her little son was troubled with a cough which made it necessary for them to be where they could consult a physician. This has not been satisfactorily shown. It does not appear that she was under the care of a physician nor that she was suffering seriously from any ailment.

In this case we think the husband has taken about as little interest in his wife as she has manifested for him. If he had been more zealously concerned for the happiness and welfare of his wife, he would now, perhaps, have less cause for complaint. A little more consideration and forbearance on his part might have avoided, for them both, the wasting of their substance and revelation of their differences in the divorce courts.

Under all of the facts in this case we think the trial judge did right in denying the divorce.

Appellant complains of some of the findings and the failure to make findings as to separate and community property. After the court found that no decree of divorce should be granted, it became unnecessary to find anything about the property owned by them or either of them.

The third finding which relates to the plea of a former adjudication became immaterial in this case because the facts were against the plaintiff on the merits. It is true there was no evidence justifying this finding and we are not informed how it came to be made. It could not have changed the decree whatever the findings might have been on this issue. The judgment was not based upon a former adjudication but upon the merits.

It is clear to us that when the defendant left his home and went to the mines to seek employment he had no intent of abandoning his wife; it is equally clear that he sent her the money in good faith with which to make the trip to his new home. While, to his discredit, he has failed to provide for her since her refusal to take up her residence with him, the law, however, for obvious reasons does not require a husband to provide for his wife so long as she declines without good cause to live with him. (*Page v. Page,* 51 Mich. 88, 16 N. W. 245; *Hardenberg v. Hardenberg,* 14 Cal. 654; *Schuman v. Schuman,* 93 Mo. App. 99; *Hagle v. Hagle,* 74 Cal. 608, 16 Pac. 518; *Beck v. Beck,* 163 Pa. St. 649, 30 Atl. 236.)

Appellant complains of the action of the trial judge in not making more liberal allowance for suit money and attorneys' fees for the prosecution of her action and the preparation and prosecution of her appeal. It seems that $80 was allowed to cover all of plaintiff's costs for the trial in the lower court, and she managed to get along with that sum; but we are not informed as to just what the costs and expenses were there. She was also allowed $75 to cover the expenses of prosecuting her appeal to this court. The transcript in this case covers one hundred and ninety-two printed pages and appellant's brief consists of fifteen printed pages. In addition to this is

the expense of having the stenographer's notes extended, fees in this court and attorneys' fees. The record shows that the plaintiff has no separate property and is certainly not prepared to meet these heavy expenses. The amount allowed for the prosecution of the appeal would be exceedingly meager fees for the attorney in prosecuting the case on appeal. We shall therefore direct that in addition to the $75 allowance already made, the costs of this appeal be paid by the respondent. Since we have reached the foregoing conclusion, it is unnecessary for us to consider any other matters discussed in the briefs. Judgment affirmed and costs awarded to appellant.

Sullivan, C. J., and Stockslager, J., concur.