(No. 6064.   January 13, 1934.)

M. L. SAVAGE, Respondent, v. WILLIAM H. STOKES, Appellant.

[28 Pac. (2d) 900.]

James A. Wayne, for Appellant.

Chas. E. Horning, for Respondent.

WERNETTE, J.—This appeal is from an order vacating and setting aside a judgment entered April 23, 1932. The pertinent facts are, as follows:

February 13, 1930, respondent, M. L. Savage, commenced an action against appellant, William H. Stokes, to recover $2,188.43, alleged to be owing on an account for goods, wares and merchandise. A writ of attachment was

issued and levied upon certain machinery owned by appellant. The appellant made answer to respondent's complaint and interposed a cross-complaint and counterclaim. The answer admitted the purchase of the goods, wares and merchandise from respondent, alleged payment in full therefor and denied any indebtedness owing from appellant to respondent. The counterclaim alleged that a contract had been entered into between respondent and appellant for the driving of a tunnel by appellant, performance of the contract and also the sale of a motor pulley and certain supplies furnished by appellant to respondent; that by these transactions respondent became indebted to appellant in the sum of $14,574.35; that respondent had furnished certain supplies to appellant and made some payments in cash on the contract, the total amount of all these payments and credits amounting to $13,266.25, thus showing a balance due from respondent to appellant of $1,308.10, for which amount he prayed judgment. In the cross-complaint appellant prayed for $2,500 damages on account of unlawful and malicious attachment.

March 6, 1930, respondent demurred, both generally and specially, to appellant's answer and cross-complaint. After the filing of this demurrer negotiations were carried on between the attorneys for the respective parties with a view to settlement, but a settlement could not be reached. Finally the demurrer was set down for hearing on May 23, 1931, and on that date submitted without argument. The demurrer was overruled and respondent given five days within which to answer the cross-complaint; no answer was ever filed thereto.

Immediately after the demurrer was overruled the respondent's attorney wrote him requesting that he call and give him the information necessary for the preparation of an answer. To this letter, and two similar letters containing the same request, respondent's attorney had no reply. In a fourth letter, dated June 23, 1931, respondent's attorney advised him that he was withdrawing as attorney in the case; still respondent paid no heed, so on July 1,

1931, respondent's attorney withdrew. In the meantime the case had been set for trial on July 1, 1931. Immediately after the withdrawal of respondent's attorney, his present attorney, Mr. Horning, requested appellant's attorney to agree to a postponement of the trial until he could examine the pleadings and investigate the facts of the case. The case was then reset for trial July 13, 1931. Two days before the date fixed for the trial respondent resumed negotiations of settlement, but the parties were unable to agree and the case was not tried.

Nothing further was done in the case from July 11, 1931, to March 21, 1932. On the last mentioned date a term of court convened and the case was set for trial. The case was tried before a jury on April 23, 1932, appellant presenting evidence and respondent not appearing either in person or by counsel. The jury rendered a verdict in favor of appellant in the sum of $1308.10, on his counterclaim and $500 damages on the cross-complaint for unlawful attachment; judgment was entered April 23, 1932.

Ten days after the verdict and judgment were rendered and filed, respondent served and filed his notice of motion for new trial, and his affidavit in support thereof. On May 20, 1932, respondent filed his motion for new trial. Thereafter respondent waived his motion for new trial and nothing further was done in the case until October 22, 1932, when he filed a motion to vacate the judgment, supporting the motion by his own affidavit, and affidavits of his attorney and the deputy clerk of the court. In the affidavit of respondent's attorney it is set forth that he was not employed to represent respondent until after the judgment had been entered; that prior to that time, between the time respondent's first attorney withdrew and the time the case was tried, he had acted merely as an accommodation for respondent, and without fee.

Having filed the motion to vacate this judgment the respondent took no further steps in the matter, but after five months the appellant's attorney served and filed a notice that he would, on March 22, 1933, move the court

to dismiss the motion for new trial, and to dismiss the motion to vacate and set aside the verdict and judgment; that in the event his motions were overruled the appellant would save an exception to said rulings. March 24, 1933, the court held a hearing on the motions, taking the matter under advisement until May 18, 1933, and then, without passing on the appellant's two motions, entered an order vacating and setting aside the judgment. Other material facts will be discussed in the opinion.

According to the assignments of error made, and issues of law raised and discussed by the respective parties, two major questions are presented: First, can the judgment be set aside for the reason that it was taken against respondent through his inadvertence, surprise and excusable neglect? Second, is the judgment rendered by the court void for want of jurisdiction?

The motion to set aside the verdict and judgment was based upon the following grounds: "1. The court had no jurisdiction to try said cause on the 23rd day of April, 1932, by reason of the following facts: (a) Said cause was not at issue and the same had been improperly and illegally placed and entered upon the trial calendar by the clerk of said court. (b) Said cause was not at issue, the plaintiff not having served or filed any answer to the defendant's cross-complaint, and the default of the plaintiff for his failure or omission to file such answer never having been entered by the Clerk or by order of the court, or otherwise. (c) Said cause had not been regularly or legally set for trial on the 23rd day of April, 1932, and no notice was ever given to plaintiff that said cause was to be tried on said date. (d) The plaintiff's attorney of record, John L. Fitzgerald, had, with the knowledge of defendant and defendant's counsel, withdrawn from said cause and ceased to act as plaintiff's attorney on July 1, 1931, and no written demand or any demand or notice whatsoever was ever made upon or given to the plaintiff by defendant or defendant's attorney or by anyone whomsoever to appoint other counsel or to appear in person. (e) No motion was ever made for a

dismissal of plaintiff's complaint for want of prosecution and no order or judgment of dismissal of plaintiff's complaint or of plaintiff's cause of action was ever made or entered herein. 2. That said judgment was taken and entered against the plaintiff through and on account of plaintiff's inadvertence, surprise and excusable neglect."

The motion to vacate and set aside the judgment was made on affidavits, no witnesses being examined before the court. It is the rule of this court, in such cases, that it will make an original examination of the evidence contained in the record, and will exercise its judgment and discretion the same as if the case were being presented to this court for determination in the first instance. (*Van Camp v. Emery*, 13 Ida. 202, 89 Pac. 752; *Council Imp. Co. v. Draper*, 16 Ida. 541, 102 Pac. 7; *Parsons v. Wrble*, 19 Ida. 619, 115 Pac. 8; *Hall v. Whittier*, 20 Ida. 120, 116 Pac. 1031.)

It has been the uniform holding of this court that a motion to vacate and set aside a default judgment is addressed to the discretion of the trial court, and unless it appears that such discretion has been abused the order will not be disturbed on appeal. (*Culver v. Mountain Home Elec. Co.*, 17 Ida. 669, 107 Pac. 65; *Richards v. Richards*, 24 Ida. 87, 132 Pac. 576; *Franklin County v. Bannock County*, 28 Ida. 653, 156 Pac. 108; *Day v. Burnett*, 38 Ida. 620, 224 Pac. 427.) But the discretion of the trial court, above referred to in the statement of the general rule, has reference to the sound judicial and reviewable discretion of the trial court. (*Holzeman v. Henneberry*, 11 Ida. 428, 83 Pac. 497; *Western Loan & Sav. Co. v. Smith*, 12 Ida. 94, 85 Pac. 1084; *Ticknor v. McGinnis*, 33 Ida. 308, 193 Pac. 850; *Atwood v. Northern Pac. Ry. Co.*, 37 Ida. 554, 217 Pac. 600.)

In *Holzeman v. Henneberry, supra,* this court, in reversing the order of the lower court vacating a default judgment, said:

"It is a well-established principle that the granting or refusing an order of this kind rests in the sound legal dis-

cretion of the court to which the application is made, and that unless it appears that such discretion has been abused, the order will not be disturbed upon appeal. (Citing cases.) This discretion must be directed and exercised within the well-established rules of law, and when the essential elements necessary to set it in action are wanting, its improper exercise will be corrected on appeal.''

In *Atwood v. Northern Pac. Ry. Co., supra,* the court made this statement:

''Under C. S., sec. 6726, the court may, *upon timely application,* relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, or excusable neglect. This court has held that the mistake, inadvertence or excusable neglect contemplated by the statute *is such as might be expected on the part of a reasonably prudent person under the circumstances, and that the statute does not excuse utter indifference and inattention to business.''*

It must be borne in mind that a judgment is property, of which the owner must not be deprived without due process of law, and the mistake or neglect relied upon as a basis for relief, to be sufficient, must be such as may be expected on the part of a reasonably prudent person, situated as was the party against whom the judgment was entered. Before the trial court can exercise its sound legal discretion to set aside a default judgment the showing must contain facts which can appeal to the discretion of the court. Where a party seeks relief on account of mistake, inadvertence, surprise or excusable neglect he is required to act within a reasonable time in making his application to the court, and in no instance exceeding six months after the adjournment of the term of the court. (Sec. 5–905, I. C. A.) That requires diligence on his part. It does not mean that in all instances if he makes his application within six months that the same was made within a reasonable time. The six months limitation provided for is fixed as the maximum time within which an application can be made. As soon as a party discovers that a default judgment

has been entered against him, if he intends to seek relief, it is his duty, diligently, to make application to the court within the earliest reasonable time, which, in no instance can exceed six months after the adjournment of the term.

■ Applying the principles of law thus set forth, what do we find? The judgment was entered against respondent April 23, 1932. He filed his notice of motion for new trial within ten days thereafter, and his motion for new trial was filed May 20, 1932. The motion thus filed was never called up for hearing before the court, but was waived. (Sec. 7-605, I. C. A.) Respondent was apprised of the fact that default judgment was entered against him on the very day that the same was rendered, but did not move to set it aside for a period of six months, when his motion so to do was filed. No steps on his part were taken to bring the motion for hearing before the court, the same not being heard until after five months from the date of filing thereof, and then at the instance of appellant.

This state of facts does not disclose any diligence on the part of respondent, but to the contrary an utter lack of diligence. It shows the respondent was not acting in good faith, and did not make his application to the court within a reasonable time. Nor does the record disclose any facts excusing him for not doing so. Lawsuits must be brought to an end some time and judgments must become final, and such dilatory tactics will not be tolerated. The court was not justified in setting aside the judgment on account of any mistake, inadvertence, surprise or excusable neglect as to respondent.

■ ■ We now come to the second proposition to be determined in this lawsuit. Did the court have jurisdiction to enter the judgment in question? If not, could the respondent have the same set aside on motion, as was attempted in this case? The law seems to be quite well established in this state that if a judgment is void, as shown upon the face of the judgment-roll, the court, upon motion of a party to the action or upon its own motion, may vacate the judgment at any time; that the limitations as provided

in section 5–905, I. C. A., do not apply; that where the invalidity of a void judgment does not appear on the face of the judgment-roll the same may be vacated upon motion made within a reasonable time. (*Armitage v. Horseshoe Bend Co.*, 35 Ida. 179, 204 Pac. 1073; *Nixon v. Tongren*, 33 Ida. 287, 193 Pac. 731; *Miller v. Prout*, 33 Ida. 709, 197 Pac. 1023; *McAllister v. Erickson*, 45 Ida. 211, 261 Pac. 242.) And this court, inferentially at least, if not expressly, held that such a reasonable time would be six months after entry of the judgment, following by analogy the time limit in section 5–905, I. C. A. (*Armitage v. Horseshoe Bend Co.*, *supra; Miller v. Prout*, *supra; Nixon v. Tongren*, *supra; Kerns v. Morgan*, 11 Ida. 572, 83 Pac. 954; *McAllister v. Erickson*, *supra; Baldwin v. Anderson*, 51 Ida. 614, 8 Pac. (2d) 461.) In either event the motion in the instant case to set aside the judgment for want of jurisdiction was made within time.

■■ The first two grounds of respondent's motion, as to the failure of jurisdiction of the court to render judgment, may properly be considered together, the substance being that at the time of trial the cause was not at issue, respondent not having filed an answer to appellant's cross-complaint, and respondent's default thereon not having been entered by the clerk of the court; that the case was therefore illegally and improperly placed and entered upon the trial calendar by the clerk. It is true that at the time of the trial no answer had been filed by respondent to appellant's cross-complaint. The demurrer of respondent to the cross-complaint was overruled by order of the court on May 26, 1931, and he was given five days in which to answer, but no answer was ever filed by him.

After such order was entered, the attorney who then represented respondent notified him on three different occasions, between the date of the entering of the order and June 23, 1931, of the fact that he would be required to file an answer within the time provided for in the order, otherwise he would be in default. It is conceded by respondent that he received such letters informing him of the

fact that it was necessary on his part to file an answer, yet he paid no heed. In other words respondent was in default in failing to file an answer to the cross-complaint, as provided in the order of the court, and actually knew such fact from the date that the answer was due.

Section 7-801, I. C. A., providing for the entry of default, among other things, provides:

"1. In an action arising upon contract for the recovery of money or damages only, if no answer has been filed with the clerk of the court within the time specified in the summons, or such further time as may have been granted, the clerk, upon application of the plaintiff, must enter the default of the defendant, . . . .

"2. In other actions, if no answer has been filed with the clerk of the court within the time specified in the summons, or such further time as may have been granted, *the clerk must enter the default of the defendant; . . . .* " (Italics ours.)

The cross-complaint of appellant did not plead a cause of action arising in contract for the recovery of damages or money only, and therefore did not come within subdivision 1, but rather set forth a cause of action in damages arising out of an unlawful and malicious attachment, coming within the purview of subdivision 2, of said section, where, if the party fails to answer within the time limit, it becomes the duty of the clerk to enter the default without *praecipe* or application therefor being necessary. (*Hall v. Whittier, supra; Morbeck v. Bradford-Kennedy*, 19 Ida. 83, 113 Pac. 89; *State v. American Surety Co.*, 26 Ida. 652, 145 Pac. 1097, Ann. Cas. 1916E, 209.) In this case the clerk of the court should have entered the default of respondent for failure to answer, without any further requirements, which act to be performed by the clerk was nothing more than a ministerial duty.

In construing a statute identical to ours the supreme court of California, in the case of *Drake v. Duvenick*, 45 Cal. 455, states:

"Nor was it necessary that Dorland's default should be actually entered up by the Clerk before a decree could be taken against him. The only purpose of a default is to limit the time during which the defendant may file his answer, and that time never extends beyond a trial and judgment. (*Bowers v. Dickerson*, 18 Cal. 420; *Miller v. Miller*, 33 Cal. 355.)"

The California court has repeatedly held that a valid judgment by default may be rendered by the court, though no formal default has been entered; or that the formal entering of a default is not an essential prerequisite to a valid judgment. (*Herman v. Santee*, 103 Cal. 519, 37 Pac. 509, 42 Am. St. 145; *Hibernia Sav. & Loan Soc. v. Matthai*, 116 Cal. 424, 48 Pac. 370; *Crouch v. Miller & Co.*, 169 Cal. 341, 146 Pac. 880.)

Further, the trial court, the parties and their respective attorneys knowing that no answer had been filed to the cross-complaint had the case set down for trial, and respondent and his attorney sought and obtained a continuance, without raising the question that the case should not be set because not at issue. We conclude that the California court correctly states the law, and under the circumstances this case was properly set for trial, even though no formal default was entered. To hold otherwise would be to permit a party to trifle with justice upon a pretended technicality.

Another ground of the motion was, that the cause had not been regularly or legally set for trial on April 23, 1932, and no notice was ever given to respondent that said cause was to be tried on said date. It appears from the record that on March 21, 1932, the opening day of the term of court, a number of cases were set for trial by the court, none of which, except the first case, were set for a definite date, the others to follow in their order as set. The instant case was to follow the case of *Dunlap v. Savage, ante,* p. 87, 29 Pac. (2d) 493. When the case of *Dunlap v. Savage* was reached for trial the parties were not ready to proceed to trial, thereupon the instant case was called for trial and actually tried, resulting in the judgment com-

plained of. It appears that no formal motion or order was made to vacate the setting of *Dunlap v. Savage, ante,* p. 87, until May 13, 1932, when it was reset to follow the case of *Saxton v. Gruesel,* and no formal motion or order was made to vacate the setting of the case at bar, or to reset it. In other words, while this case had been set for trial to follow *Dunlap v. Savage, ante,* p. 87, it was never reset but was actually heard ahead of the Dunlap case, all without notice to respondent when the case would be tried or that it would be tried on April 23, 1932. We do not believe that such contention made by respondent is tenable. It appears quite plain, from the record, that at the time when these cases were set for trial, on March 21, 1932, each to follow the other in the order as set, it was distinctly intended, known and understood that in the event any one of the cases so set was not actually tried when reached, or the setting vacated, the next case set to follow such case would be called for trial. So that in the instant case when the case of *Dunlap v. Savage* was not tried when reached this case would be called for trial, and it appears from the record that such was done.

█ █ The complaint made by respondent that he was not notified of the setting of the case for trial is without foundation. In the case of *Peters v. Walker,* 37 Ida. 195, 215 Pac. 845, this court held:

"In the absence of a statutory provision or rule requiring that parties be expressly notified of the setting of a cause, no such notice need be given, but the court has the power to set it for trial at a regular term, and it is incumbent on the parties and their counsel to keep informed."

This state has no statutory provision requiring that parties be expressly notified of the setting of a cause. In the case of *Sautbine v. Jones,* 161 Okl. 292, 18 Pac. (2d) 871, the Oklahoma court stated:

"It is also the law in this state that failure to receive notice of the setting of the case does not of itself constitute a sufficient ground upon which to vacate a judgment."

In that case both the party and his attorney failed to appear at the trial, and afterwards sought to vacate the judgment on the ground that they had no notice of the trial. (See, also, *Baker v. Hunt & Co.*, 66 Okl. 42, 166 Pac. 891; *Colley v. Sapp*, 90 Okl. 139, 216 Pac. 454.) As to the setting of the trial on appellant's cross-complaint, without particular notice, respondent cannot be heard to complain for the reason that he was in default and was not entitled to any notice of further proceedings during any time that he was in default. (*Hall v. Whittier, supra; Nuestel v. Spokane International Ry. Co.*, 27 Ida. 367, 149 Pac. 462; *McAllister v. Erickson, supra.*)

It is next contended by respondent, that the court was without jurisdiction for the reason that the appellant did not move for a dismissal of plaintiff's action for want of prosecution, nor for a nonsuit at the trial, and that judgment of nonsuit or dismissal was never entered. From the record it appears that respondent's complaint involved the same transaction as did appellant's counterclaim. The matter in dispute was a correct accounting between the parties. Respondent's action was based on the balance of account due him for goods, wares and merchandise. Appellant admitted the various items of account of respondent, questioning only the price charged him for powder, and appellant set forth a counterclaim in which he alleged that he gave respondent credit for all he had coming, and showing a balance due appellant of over $1300. In the affidavits filed by respondent and his attorney it was conceded that the price of the powder, contended for by appellant, was correct, leaving only one issue in dispute as between the parties, namely, the length of the tunnel driven by appellant for respondent. The fact as to whether there was an amount due to one party or the other, as a balance of account, depended upon the determination of that one issue.

Appellant was entitled to a trial on his counterclaim. Had he moved to dismiss respondent's action, as respondent contends he should have done, and the same had been

granted by the court, the counterclaim would have gone with it. This appellant was not required to do. This was not the character of an action requiring the appellant to move for a nonsuit, for if he had done so it would have had the same effect as a motion for dismissal and, further, it would have destroyed the very foundation upon which his cross-complaint was based, which he had a right to have tried. (*Brown v. Reed & Co.*, 31 Ida. 529, 174 Pac. 136. And see 9 Cal. Jur. 518, sec. 11.) We, therefore, conclude that the court did not lose jurisdiction to enter the judgment in question on account of failure of appellant to move for a dismissal or nonsuit as to respondent's cause of action.

The last and final ground contended for by respondent for vacating the judgment for want of jurisdiction, is the failure of appellant to give written notice to respondent after the latter's attorney, Mr. Fitzgerald, had withdrawn from the case and ceased to act as such on July 1, 1931, requiring respondent to appoint another attorney or to appear in person before taking any further proceedings in the action. The record discloses that respondent was notified in writing, by his attorney, that he was withdrawing as attorney in the case; that respondent thereafter had actual notice of such withdrawal. The respondent no longer depending on Mr. Fitzgerald as his attorney then engaged Mr. Horning, his present attorney, who secured postponement of the trial when the case was set for July 1, 1931. Respondent now contends that Mr. Horning, at that time, merely appeared for him as an accommodation, and not as his regularly employed attorney. As we view it, it matters not whether he appeared as an accommodation or otherwise, he appeared as attorney for the respondent nevertheless, with the knowledge, acquiescence and consent of respondent. In support of his contention respondent relies upon the following section of our code:

Section 3–206, I. C. A., "When one party's attorney dies, is removed, suspended, or ceases to act as such, the adverse party must, before any further proceedings can be had by

written notice, require such party to appoint another attorney or to appear in person.''

Particular stress is placed upon the fact that the provisions of said section were not complied with, in that his former attorney, Mr. Fitzgerald, withdrew as such and appellant did not give any written notice requiring respondent to appoint another attorney or appear in person. We find no merit in respondent's position. The particular law in question cannot be so construed as to require a party to do an idle, useless and purposeless thing. He knew that his first attorney, Mr. Fitzgerald, had withdrawn and why. Apparently he knew and appreciated the fact that either he or some other attorney would have to attend to the matter in court to protect his interest after such withdrawal, as he obtained the services of Mr. Horning to secure a postponement of the trial. The particular section of the statute in question was enacted so that no undue advantage can be taken of a party if for any reason his attorney withdraws from the case. Respondent cannot contend that any undue advantage was taken of him, as after the withdrawal he appeared by another attorney to safeguard his rights. He does not say that he was ignorant of the fact that after the withdrawal another attorney was required, or that he would have to act in person. Even if he did the record proves otherwise. He does say, however, that the reason he did not employ another attorney or act in his own behalf is because of the fact that he was relying upon his explicit understanding with appellant and his counsel that no further proceedings in the case would be taken without further notice to him. Appellant and his attorney each expressly deny, in their affidavits, that any such understanding was had or that anything was said or done from which respondent could have drawn such an inference. The bald statement of respondent that he honestly believed such an understanding was had is insufficient, when expressly denied as in this case, and all the surrounding facts and circumstances indicate that it was very improbable that such an understanding was had. During all of the negotiations, as shown

by the record, there is nothing to indicate that at any time appellant receded from his position that respondent owed him a considerable sum of money, as claimed. He refused to dismiss his cross-complaint when requested by respondent, and negotiate to settle later. We hold that the record clearly discloses that respondent had every reason to believe that appellant would insist on the trial of the case. Under the particular facts and circumstances existing it was either the duty of respondent to look after his own case or employ another attorney to do so for him, without any further written notice on the part of appellant.

In *Smith-Nieland v. Reed*, 39 Ida. 788, 231 Pac. 102, this court stated:

"This statute, (having reference to the particular statute in issue) as we construe it, has no application where the adverse party has personal knowledge of the withdrawal of her attorney and of the setting of the case for trial, and therefore respondents were under no duty to give notice."

In that case the appellant had actual knowledge of the fact that her attorney had withdrawn, also that the case had been definitely set for trial. In the instant case respondent claims he did not have any knowledge of the setting of the case for trial. Although he knew for months that his attorney had withdrawn, he was willing to take his chances without having a retained attorney look after his interests. Being willing to go without an attorney, as heretofore stated, it was his duty to keep informed, and it was not necessary for him, under our law, to have special notice that the case was set for trial. (*Peters v. Walker, supra,* and see *Herman v. Hawley,* 118 Kan. 17, 233 Pac. 1031.)

We hold that the trial judge abused his discretion in making the order setting aside the judgment, and the order is hereby reversed.

Costs to appellant.

Budge, C. J., and Givens, Morgan and Holden, JJ., concur.