703 P.2d 699

Marcilena SHELTON, Individually, and as guardian ad litem for Desiree Rochelle Noble Shelton, Ronald Eugene Noble Shelton, Doyle Ray Noble Shelton and Teranie Leanne Noble Shelton, Plaintiffs-Appellants,

v.

DIAMOND INTERNATIONAL CORPORATION and "XYZ Corporation," whose true name is unknown, Defendants-Respondents.

No. 15305.

Supreme Court of Idaho.

July 15, 1985.

Michael K. Branstetter, Wallace, for plaintiffs-appellants.

Patrick E. Miller, Coeur d'Alene, for defendants-respondents.

BAKES, Justice.

This is an appeal from an order granting relief from a default judgment on the basis of inadvertence and excusable neglect under I.R.C.P. 60(b)(1). We affirm.

Harold Shelton was killed on August 20, 1980, when the car he was driving went off a road and down a steep embankment. On August 19, 1982, one day before the statute of limitations was to expire, Shelton's heirs filed a complaint alleging that the road was within the control of and negligently maintained by defendant Diamond International Corporation ("Diamond"). The defendant Diamond is a Delaware corporation with its principal place of business in New York City. The summons and complaint were not served upon Diamond's registered agent in Idaho, the C.T. Corporation, until August 18, 1983, approximately

one year after the complaint was filed. Twenty-one days after service, on September 9, 1983, the plaintiffs took a default judgment against Diamond which had not filed an answer or made an appearance. The default judgment awarded Mrs. Shelton $1.8 million in damages in her individual capacity for the wrongful death of her husband.

On September 20, 1983, Diamond filed a motion to vacate the default judgment. The motion was accompanied by several affidavits of Diamond's employees, officers, insurance carrier and attorney. The affidavits stated that from the date of service it took seven days for the summons to be transferred by C.T. Corporation, the registered agent, from its Boise office to the agent's New York office, and then another five days to be transferred by C.T. Corporation to Diamond's New York office. At that point, Diamond's executive secretary's usual course of action was to forward the summons to Diamond's insurance manager, but he had recently resigned with no replacement hired. The executive secretary inquired within the company and was advised that the assistant treasurer was now handling all service of process; however, she was on vacation at the time so that the summons was not given to her until twelve days after arriving in Diamond's New York office. The summons was then transferred to Diamond's insurance broker two days later, and another five days elapsed before the insurance carrier responsible to defend the claim received the notice. On that day the insurance carrier immediately telephoned and retained Idaho counsel who filed the motion to set aside the judgment on the following day, September 20.

The affidavit of Diamond's vice president and general counsel further stated that the corporation was acquired by merger in December, 1982, and since that time had been selling off most of its operating divisions and assets, resulting in many employees resigning without replacements being hired, with the remaining staff working under pressure and long hours. Particularly, during August and September, they were distracted from other matters because of the consummation of a sale of assets of one of its divisions. The affidavits also stated that Diamond maintained an office in Coeur d'Alene, Idaho, which had not been notified in any form of the pending complaint, although two years earlier, in August, 1981, an attorney for the Sheltons had contacted the office to ascertain Diamond's potential liability. The office was never contacted either when the complaint was filed or before the default was taken.

Diamond also filed a proposed answer setting out the defense that the road on which the accident occurred was owned by the federal government which controlled the use of the road by parties other than Diamond, and that Diamond merely had an easement to use the road. The answer also alleged contributory negligence based upon allegations of inattentive driving, excess speed and drinking.

The trial court found that the circumstances of this case adequately showed excusable neglect and inadvertence on behalf of Diamond. The trial court noted the policy in Idaho to resolve doubtful cases by setting aside the judgment in favor of proceeding to the merits of the case, and further found that Diamond's proposed answer presented a meritorious defense. The court then found that Diamond was attempting to diligently act on the summons even though it was not efficient in moving the summons through the various channels. The trial court further considered factors, such as the distance to New York and the 12-day delay caused by the registered agent, which factors, when combined with the other problems within the corporation, amounted to excusable neglect and inadvertence. Based upon its finding of inadvertence and excusable neglect, the trial court set aside the default judgment.

The right to relief from a default judgment is provided by I.R.C.P. 55(c) which adopts by reference the standard from I.R.C.P. 60(b)(1), which provides, "On motion and upon such terms as are just,

the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect...." In *Newbold v. Arvidson*, 105 Idaho 663, 664, 672 P.2d 231, 232 (1983), the Court stated that "[a] motion to set aside default judgment is addressed to the sound legal discretion of the trial court, whose decision will not be reversed in the absence of abuse of that discretion. *Hearst v. Keller*, 100 Idaho 10, 592 P.2d 66 (1979)." After reviewing the record, we conclude that the trial court did not abuse its discretion and accordingly we affirm.

In its findings and conclusions the trial court analyzed the particular circumstances presented in this case and carefully applied the legal principles set out in our previous cases concerning the trial court's standard to evaluate motions to set aside default judgments. We find no abuse of discretion on the part of the trial court. Appellants, however, cite to us a parallel but conflicting line of Idaho cases which hold that, regardless of whether or not the trial court abused its discretion, this Court may undertake its own independent review, where the record is wholly documentary as it is here, and make its own discretionary decision as to whether the judgment should be set aside. *See Hearst Corp. v. Keller, supra; Wood v. Wood*, 100 Idaho 387, 597 P.2d 1077 (1979); *Fisher v. Bunker Hill Co.*, 96 Idaho 341, 528 P.2d 903 (1974); *Parsons v. Wrble*, 19 Idaho 619, 115 P. 8 (1911). The Idaho Court of Appeals recently attempted to amalgamate these two seemingly inconsistent appellate standards of review, noting that with the advent of the Federal Rules of Civil Procedure, and particularly Rule 52(a), the federal courts have held that, even where matters are submitted to a trial court on wholly documentary evidence, nevertheless the "clearly erroneous" standard of review under I.R.C.P. 52(a) applies to those findings based wholly on documentary evidence. *E.g., United States v. Singer Mfg. Co.*, 374 U.S. 174, 194–95, n. 9, 83 S.Ct. 1773, 1784, n. 9, 10 L.Ed.2d 823 (1963); 5A J. Moore, Moore's Federal Practice para. 52.01(7) (2d ed.

1985). The Court of Appeals, in *Avondale on Hayden, Inc. v. Hall*, 104 Idaho 321, 658 P.2d 992 (Ct.App.1983), stated:

"A motion for relief from a default judgment invokes both the fact-finding and law-applying functions of the trial court. It requires the court to determine the facts concerning the circumstances of the default, and to apply the criteria of I.R.C.P. 60(b) to the facts found. Appellate restraint, in review of such factual determinations, is consistent with the principles embodied in Rule 52(a) and with the traditional principle of deference to trial court discretion in deciding whether to grant relief from default judgments. We believe these important principles are unduly damaged by the broad suggestion in *Parsons* and its progeny, that where the evidence in proceedings to set aside a default judgment is wholly documentary, an appellate court may displace both the fact-finding and law-applying functions of the trial court. In our view, the rule of *Parsons* should be narrowed to mean that, although an appellate court may draw its own impressions from evidence entirely in writing, it will not substitute those impressions for findings of fact by the trial court unless the findings below are deemed to be clearly erroneous. This formulation brings the rule of *Parsons* into greater accord with the basic principles of trial court discretion in default cases and of deference to trial court findings of fact which are not clearly erroneous.

"Accordingly, we hold that a trial court decision on a motion for relief from a default judgment will not be disturbed on appeal unless it represents an abuse of discretion. Where oral testimony has been received, we will give due regard to the trial judge's special opportunity to evaluate the credibility of the witnesses. Where the evidence is entirely in writing, we may draw our own impressions from the record, but we will not substitute our impressions for findings of fact by the trial judge unless we are convinced that

those findings are clearly erroneous." 104 Idaho at 325, 658 P.2d at 996.

█ While the foregoing standards set out by the Court of Appeals do not entirely solve the dilemma, we conclude that the *Avondale* approach is preferable to the two conflicting lines of authority presently reflected in our decisions which state on the one hand that the sole issue on appeal is whether or not the trial court abused its discretion, *Newbold v. Arvidson, supra,* and the line of cases, of which *Hearst Corp. v. Keller, supra,* is the most recent example, which hold that where the motion to set aside a default judgment is submitted wholly on written documents this Court may undertake its own independent review and make its own discretionary decision as to whether the judgment should be set aside.

Accordingly, we agree with the conclusion of the Court of Appeals in the *Avondale* case that:

"When we review, on appeal, the trial court's application of law to the facts found, we will consider whether appropriate criteria were applied and whether the result is one that logically follows. Thus, if (a) the trial court makes findings of fact which are not clearly erroneous, (b) the court applies to those facts the proper criteria under Rule 60(b)(1) (tempered by the policy favoring relief in doubtful cases), and (c) the trial court's decision follows logically from application of such criteria to the facts found, then the court will be deemed to have acted within its sound discretion. Its decision will not be overturned on appeal." 104 Idaho at 326, 658 P.2d at 997.

Applying the foregoing standard to the facts of this case, we conclude that the trial court's findings of fact are "not clearly erroneous" under I.R.C.P. 52(b); that the trial court properly applied the criteria of I.R.C.P. 60(b)(1) to those facts (tempered by the policy favoring relief in doubtful cases); and the trial court's decision follows logically from application of such criteria to the facts found. Accordingly, the decision of the district court is affirmed.

Costs to respondent, no attorney fees on appeal.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

## I.

If the majority were perceived as sincerely trying to bring some stability into the law, I would be inclined to join the opinion for the Court. One large obstacle standing in the way of my doing so is that I joined the Court's unanimous opinion in *Hearst Corp. v. Keller,* 100 Idaho 10, 592 P.2d 66 (1979). This is not ancient history. We are talking about six short years ago. Therein, five good legal minds were of a single view that:

[W]here the motion was heard on the written record only and without oral testimony, the appellate court may exercise its own discretion in passing on the matter. *Fisher v. Bunker Hill Co., 96 Idaho 341, 528 P.2d 903 (1974); Thomas v. Stevens,* 78 Idaho 266, 300 P.2d 811 (1956).

A motion to set aside a default judgment is addressed to the sound legal discretion of the trial court whose decision will not be reversed unless an abuse of discretion clearly appears. *Fisher v. Bunker Hill Co., supra.*

A mistake sufficient to warrant setting aside a default judgment must be of fact and not of law. *Neglect must be excusable and, to be of that calibre, must be conduct that might be expected of a reasonably prudent person under the same circumstances. Thomas v. Stevens, supra.* The record herein does not raise questions of inadvertence or surprise.

Defendant's affidavit herein offers as his mistake or excusable neglect only his statement that he was unaware of the strict requirements of the rules requiring answer and counterclaim to be made within twenty days of service. He offers no reason for reaching such a conclusion

in view of the plain wording of the summons to the contrary. There is no plea that he could not read or understand, or was in any way distracted by other urgent matters. If he mistook the law such a mistake is not sufficient. *If he decided the wording of the summons did not mean what it plainly said, such neglect was not the act of a reasonable person under like circumstances and was therefore not excusable. Hearst Corp., supra,* 100 Idaho at 11–12, 592 P.2d at 67–68 (emphasis added).

The case law set forth in *Hearst* was not new. The principle of law set forth in the first paragraph above has been firmly entrenched in Idaho jurisprudence for well over a half century. During all of that time it was subjected to no criticism. During all of that time this Court sometimes determined to exercise its own discretion in reviewing an order granting or denying relief from a default, but most times it simply agreed with the reasoned ruling of the district court. The principle as applied over the many years allowed this Court, where the record was a cold one, to make use of the collective knowledge and experience of more than a single judge. With that in mind, it is appropriate to turn to the facts of this case, following which I will submit that this Supreme Court has today once again irresponsibly struck down well-settled case law.

## II.

In the case before us today, the showing made to set aside the default was not as elaborate as portrayed in the majority opinion. The affidavit of a Joan Jarvis is the *sole* supporting documentation of claimed excusable neglect or inadvertence. As pertinent, she avers the following:

4. That after her receipt of the Process, in view of Diamond's Insurance Manager having recently resigned and no replacement having been hired, she asked Mr. John Calamari, Manager of Employee Benefits Department, a department affiliated with the Insurance Department, if he could take care of the matter. Mr. Calamari advised her that he was not aware of how to handle these matters. He stated that since Mr. Trivisone's departure, his superior, Ms. Joan Myers, Assistant Treasurer of Diamond and former Insurance Manager, had been handling all service of process data.

5. That at the time of Diamond's receipt of the Process, Ms. Myers was on vacation until September 12, 1983. Upon her return on that date she delivered to her the Process.

6. That on September 14, 1983 Ms. Myers had the Process hand delivered to Diamond's insurance agent, Mr. Adolf Gobel, of Tiernan & Tiernan, 111 Fulton Street, New York, New York, (file copy of forwarding letter attached).

7. *That during the course of the above related events she was not aware of the 20 day time requirement to answer the Process nor of any of the particulars of the extensive claim.*

8. *That she has never been involved in handling any prior service of process resulting in an untimely answer.* (Emphasis added.)

An affidavit of a Victor Stronski avers only:

1. That he is a Vice President and the General Counsel of Diamond International Corporation ("Diamond"), a Delaware corporation having its principal place of business at 733 Third Avenue, New York, New York.

2. That on December 3, 1982 Diamond was acquired by merger into an indirect, wholly-owned subsidiary of General Oriental Limited.

3. That since the merger, Diamond, a company with 1982 sales in excess of $800 million, has been continually engaged in the sale and disposition of most of its operating divisions and its other property and assets.

4. The merger itself created uncertainty resulting in many members of the corporate staff in New York resigning upon obtaining other positions. Replacing employees who resigned became im-

practical and difficult and was never effectively accomplished.

5. The small remaining staff of Diamond, including its reduced Legal staff, has worked under undue burdens and pressures. The employees remaining regularly worked 10 to 12 hours a day. Saturday and Sunday work was required from time to time and, on occasion, various employees worked through the night and early morning.

6. That in particular during the month of August, 1983 and up to and including September 26, 1983, on which date a contract was signed providing for the sale of the assets of Diamond's Fiber Product Division of Packaging Corporation of America, much time was spent away from the office and the undersigned and all Legal Department personnel were distracted from other matters which might have arisen.

7. That the occurrence of Diamond's failure to timely answer in the subject action was inadvertent and attributable to the above events.

R., Vol. 2, pp. 41–42.

What my mind makes of that offering is that Diamond was too busy doing $800 million in sales to attend to the business of responding to the warning of the summons, and Joan Jarvis cannot understand an Idaho summons printed in English. Other than for obliging the desires of this large corporation, I can see little reason why the default judgment should be trifled with.

## III. A.

The majority's strange adoption of the Court of Appeals' rule announced in *Avondale on Hayden, Inc. v. Hall*, 104 Idaho 321, 658 P.2d 992 (Ct.App.1983), recalls to mind a passage in *Carpenter v. Double R Cattle Co., Inc.*, 108 Idaho 602, 701 P.2d 222 (1985):

We have before us today a most remarkable event: two appellate courts, each obviously unaware of its true appellate function. The Court of Appeals, in reviewing the instant case, acted as a court of law, while the Idaho Supreme

Court functioned as a court of error correction. In my mind, the roles have been reversed—I always understood that the Court of Appeals was a court of error correction, and it was our function to act as a court of law.

In *Avondale* the narrow issue confronting the Court of Appeals was whether to affirm or reverse a district court order denying a motion to set aside a default. Only at the conclusion of the *Avondale* opinion does the reader discover the proof offered to justify setting aside the judgment. The opinion then notes that: "The district court concluded that none of the criteria recited in Rule 60(b)(1), including the reasonable prudence requirement, had been satisfied by the evidence." *Id.*, 104 Idaho at 327, 658 P.2d at 998. The conclusion of the Court of Appeals was easily stated: "The judge's decision follows logically from the facts found and criteria applied." *Id.*

The district judge referred to was the Honorable Watt E. Prather, one of Idaho's more experienced trial judges, and also the author of this Court's unanimous opinion in *Hearst, supra,* a decision which Judge Prather had not forgotten in entering the order denying relief, when he wrote:

No reason is set forth why Halls were unable between March 23, 1979, and June to properly take care of protecting their interests in this litigation.

The record herein does not disclose any mistake of law on the part of defendant nor does the record herein set forth any element of surprise on said defendant's part. It is the conclusion of the Court that the facts set forth by defendants Hall are not sufficient to constitute excusable neglect or inadvertence. See the Hearst Corporation, dba Hearst Magazines Division, a corporation, vs. Frank Keller, Supreme Court opinion number 12784 filed March 13, 1979, 26 ICR 205.

All the Court of Appeals needed to do in *Avondale* was to set forth the foregoing and add the two sentences from its opinion above set forth and affirm. There was no call for the Court of Appeals to instead

declare new law and overrule, *sub silentio*, *Hearst, supra,* and a long line of cases dating back over 80 years. Especially is this true when Judge Prather, in his memorandum opinion, specifically relied upon *Hearst* as authority for his decision.

Rather than apply *Hearst*—the most recent announcement by this Court on the issue—the Court of Appeals relegated it to a footnote of unimportance and proceeded to tilt at the ancient cases of *Roby v. Roby,* 10 Idaho 139, 77 P. 213 (1904) and *Parsons v. Wrble,* 19 Idaho 619, 115 P. 8 (1911), which were readily disposed of in a non-adversarial setting.

Long-standing case law which emanated from this Court, not from the Court of Appeals, was discarded, at least until this Court was presented with the opportunity to intervene. All of this the Court of Appeals did voluntarily, while at the same time acknowledging that the principle involved had been applied by this Court a "substantial number" of times. *Id.* 104 Idaho at 323, 658 P.2d at 994. A "substantial number" includes the following: *Wood v. Wood,* 100 Idaho 387, 597 P.2d 1077 (1979); *Hearst, supra; Fisher v. Bunker Hill Co.,* 96 Idaho 341, 528 P.2d 903 (1974); *Crumley v. Minden,* 80 Idaho 391, 331 P.2d 275 (1958); *Johnson v. McIntyre,* 80 Idaho 135, 326 P.2d 989 (1958); *Johnson v. Noland,* 78 Idaho 642, 308 P.2d 588 (1957); *Thomas v. Stevens,* 78 Idaho 266, 300 P.2d 811 (1956); *Stoner v. Turner,* 73 Idaho 117, 247 P.2d 469 (1952); *Perry v. Perkins,* 73 Idaho 4, 245 P.2d 405 (1952); *Curtis v. Siebrand Bros. Circus & Carnival Co.,* 68 Idaho 285, 194 P.2d 281 (1948); *Cleek v. Virginia Gold M & M Co.,* 63 Idaho 445, 122 P.2d 232 (1942); *Boise Flying Service Inc. v. General Motors Acceptance Corp.,* 55 Idaho 5, 36 P.2d 813 (1934); *Savage v. Stokes,* 54 Idaho 109, 28 P.2d 900 (1934); *Hall v. Whittier,* 20 Idaho 120, 116 P. 1031 (1911); *Parsons, supra; Council Improvement Co. v. Draper,* 16 Idaho 541, 102 P. 7 (1909); *Van Camp v. Emery,* 13 Idaho 202, 89 P. 752 (1907); *Roby, supra.* Notwithstanding that formidable array of cases, which in their totality probably included every justice who has sat on this Court, the

Court of Appeals deemed it appropriate to interfere.

My thought is that the Court of Appeals acted inopportunely, and apparently without a proper regard for the law as it had just shortly before (four years) been reaffirmed in *Hearst* by a unanimous Court. What motivated the Court of Appeals? Frankly, I do not know, but suspect that the court surmised that it would be *the* appellate court primarily and routinely first reviewing *all* appeals from orders granting or denying relief from defaults and default judgments. In the general order of things that surmise seems well justified, and I know not why this particular case now at bench was not proper for assignment to the Court of Appeals.

Similarly, in *State v. Tisdale,* 103 Idaho 836, 654 P.2d 1389, the Court of Appeals, in recognition of the obvious, that is, that it would be the court handling all sentence reviews other than capital cases, announced the rule that sentencing judges would henceforth be required to state of record the reasons and reasoning by which sentences were derived and imposed. It was a good rule, and a needed rule.

Four months later, in *State v. Osborn,* 104 Idaho 809, 810, 663 P.2d 1111, 1112 (1983), a majority of this Court gratuitously overruled the *Tisdale* rule:

> We note that while the setting forth of reasons for the imposition of a particular sentence would be helpful, and it encouraged, it is not mandatory. To the extent that *Tisdale* is inconsistent with the views expressed herein, it is overruled.

Writing separately in support of the Court of Appeals, I observed that the needless overruling of *Tisdale* may be a disservice to that court and to the district courts as well, and went on to explain why. *Osborn, supra,* 104 Idaho at 811, 663 P.2d at 1113. Plainly to be seen, I do not believe in ham-stringing the Court of Appeals—*needlessly.* Today, however, I firmly believe that the Court of Appeals erred in *Avondale* when it advocated the abandonment of a rule of long-standing duration, and one

which had not been criticized at any time in the history of Idaho jurisprudence.

## B.

More dismaying to my mind, however, is the willingness with which the majority adopts the *Avondale* rule as the springboard from which it can so easily jump to affirming the district court, saying only that, yes, there have been two conflicting lines of case law—a statement which would have been better said of sentence review. *See State v. Adams*, 99 Idaho 75, 577 P.2d 1123 (1978) (Bistline, J., dissenting). A review of these "conflicting" cases cited by the majority reveals that the conflict is more illusory than actual.

There is no conflict in stating that a motion to set aside a default judgment is committed to the sound legal discretion of the trial court whose decision will not be reversed unless an abuse of discretion clearly appears, and stating that an appeals court may exercise its own discretion in reviewing a written record void of oral testimony in determining the veracity of alleged factual matters. In either case, whether the trial court's decision was based on oral testimony, written documentation, or both, the appellate review will be leveled at determining whether the court erred in deciding as it did. The only difference is that on a motion decided solely upon a written record, broader leeway is and should be afforded the appellate court in evaluating the explanation of the failure to answer the complaint in a timely manner. Nevertheless, review of the district court's decision will be the same no matter what type of record is before us. I would maintain that leeway. Just as one could expect a three-member Court of Appeals to possess a greater consensus of legal talent than a single district judge, on an important issue such as this one, a five-member court should possess an even broader range of experience and ability in arriving at a consensus.

## C.

Far better than changing the rules of the game, this Court, if a consensus of the majority so dictated, could have utilized language in *Stoner, supra,* as authority. "But, except as to those which are mandatory or jurisdictional, procedural regulations should not be so applied as to defeat their primary purpose, that is, the disposition of causes upon their substantial merits without delay or prejudice." *Stoner, supra,* 73 Idaho at 121, 247 P.2d at 471. The Court there went on to note "the harsh and often unjust consequences of a strict application of the time requirement," and that "the court's discretion should be freely and liberally exercised." *Id.* On the other hand, it was further noted "it should appear that the defaulting party is not guilty of indifference ...," *id.,* an outstanding recent example of which was *Catledge v. Transport Tire Co., Inc.,* 107 Idaho 602, 691 P.2d 1217 (1984). Although the indifference in that case initially displayed on being served with process was much the same as here, in this case the defaulting party moved expeditiously on being confronted with the default judgment; in *Catledge* the defaulting party did not do so. In *Stoner,* the Court resolved an equipoise situation in favor of the defaulting party on the basis that "it still appears appellant [defaulting party] acted promptly on discovering the default." *Id.,* 73 Idaho at 121, 247 P.2d at 471.

The endorsement of the *Avondale* case poorly serves the trial bench and bar where judicial precedent is concerned, and is both unnecessary and unjustified. Six short months ago this Court, constituted with the identical membership today as in *Catledge,* disdained the opportunity to apply the rule espoused by the Court of Appeals in *Avondale.* Entertain no doubt about it. It was argued at pp. 20–21 in the brief of plaintiffs-respondents, and argued in defendant-appellant's reply brief at pp. 10–11. Yet, *Avondale* went unmentioned in the Court's *Catledge* opinion. At the same time, *Hearst* was given recognition. That was but six months ago, and *Hearst* was but six years ago—not a long passage of time in either case. Although it has been said that the doctrine of *stare decisis* is a salutary

rule, and not an inexorable command, the practice of law requires a greater degree of stability in the precedent of case law than this Court is providing. As one writer has expressed it:

The most intolerable evil, however, under which we have lived for the past twenty-five years, has been the changing and shifting character of our judicial decisions, by which we have been deprived of the inestimable benefit of judicial precedents as a safeguard to our rights of person and property.